Hillsborough-northern judicial district
No. 94-123

LINDA M. BERGERON & a.

v.

CITY OF MANCHESTER & a.

November 9, 1995

*Abramson, Reis & Brown*, of Manchester (*Mark A. Abramson & a.* on the brief, and *Stanley M. Brown* orally), for the plaintiffs.

*Jeffrey R. Howard*, attorney general (*Mark P. Hodgdon*, assistant attorney general, on the brief and orally), for defendants New Hampshire Department of Transportation and Frank B. Lindh, Jr.

*McDonough & O'Shaughnessy, P.A.*, of Manchester (*Robert J. Meagher* on the brief and orally), for defendant City of Manchester.

BROCK, C.J. This interlocutory appeal from ruling, *see* SUP. CT. R. 8, arises from the Superior Court (*Barry*, J.) denial of defendants State of New Hampshire Department of Transportation (DOT) and Frank B. Lindh, Jr.'s motions for summary judgment and defendant City of Manchester's (city) motion to dismiss. The trial court ruled that the doctrine of sovereign immunity does not insulate the defendants from a lawsuit alleging negligent safety precautions at a particular intersection in Manchester. We reverse and remand.

The plaintiffs, Linda M. Bergeron and Denise A. Doty, are co-administrators of the estate of John W. Taillon. In 1987, Taillon was killed when the vehicle he was driving was struck by a vehicle driven by Ioanis Grigas. The accident occurred at the intersection of By-Pass 28, a State highway, and Wellington Road, a city street, in Manchester. Taillon was traveling on By-Pass 28 at the time; Grigas failed to see an oversized "Slow" sign and an oversized "Stop" sign as he approached the intersection while traveling on Wellington Road. Grigas entered the intersection and collided with Taillon's vehicle, resulting in Taillon's death.

Seventeen accidents occurred at this intersection between 1979 and the date of the accident that precipitated this case. In 1981, the Manchester Board of Aldermen determined that the intersection constituted a "hazard" and asked the State to install a flashing beacon at the intersection. The DOT declined, concluding that the intersection failed to meet the criteria which would warrant such an installation.

The DOT installs traffic control signals based on criteria in the manual TRAFFIC CONTROL STANDARDS, STATUTES & POLICIES (TCSSP), published by the department of public works and high-ways. The DOT has adopted a set of criteria, called "warrants," which specify the conditions that warrant the installation of particular traffic control devices. According to the TCSSP, a warrant "define[s] the minimum conditions under which signal installations may be justified."

The installation of a flashing beacon is warranted when three accidents occur at a particular intersection during a one-year period

if those accidents are "of the type which may be reduced by the use of flashing beacons." After denying the city's request for installation of a flashing beacon in 1981, the State authorized installation of an oversized "Stop" sign, an international "Stop Ahead" sign, and a diamond-shaped yellow "Slow" sign. Four accidents occurred at the intersection between December 1985 and December 1986. The accident that precipitated this case occurred in September 1987.

The appeal statements present the following questions of law:

1. Whether the decision to install a flashing beacon at this intersection under these circumstances and to otherwise regulate traffic on state highways is either a legislative function or an executive planning and policy-making function from which the State remains immune from suit under RSA 541-B:19, I.

2. Whether the setting of minimum criteria, called Warrants, for the consideration of traffic signal device installation required the installation of signals once the warrants were met.

3. Whether the decision to install a flashing beacon at this intersection under this set of underlying facts and history . . . and to otherwise regulate traffic at the intersection is either a legislative function or an executive planning and policy[-]making function from which the City remains immune from liability.

4. Whether the City owed the decedent a duty to keep track of accidents at this intersection after actual notice of the fatality in 1981, and a duty to inform the State of these accidents, and whether the City had a duty to have a professional staff in place to keep track of accidents and make decisions in regard to signals at the intersection.

5. Whether the City's record[-]keeping and organizing of accident information and the City's decisions in regard to staffing are also protected by discretionary immunity.

## I. Sovereign and Municipal Immunity

Neither the city nor the State enjoys full sovereign immunity from tort liability. *Merrill v. Manchester*, 114 N.H. 722, 725, 332 A.2d 378, 383-84 (1974); RSA 541-B:19 (Supp. 1994). In fact, immunity is the exception, rather than the rule, in tort cases. *See* RSA 541-B:19; *Schoff v. City of Somersworth*, 137 N.H. 583, 589, 630 A.2d 783, 787 (1993).

Because the standards governing whether a city is immune from tort liability under *Merrill* do not differ appreciably from those that govern the State's immunity under RSA chapter 541-B, *compare DiFruscia v. N.H. Dept. of Pub. Works & Highways*, 136 N.H. 202, 205, 612 A.2d 1326, 1328 (1992) *with Gardner v. City of Concord*, 137 N.H. 253, 257, 624 A.2d 1337, 1339 (1993), we will address the city and the State's immunity questions together.

Government entities are immune from liability for conduct that involves "the exercise of a legislative or judicial function, [or] the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion." *Gardner*, 137 N.H. at 256, 624 A.2d at 1339 (quotation omitted); *see* RSA 541-B:19. In the instant case, the trial court concluded that the decision whether to install a flashing beacon at the subject intersection was not, as a matter of law, a discretionary function.

In resolving discretionary immunity questions, we distinguish between planning or discretionary functions and functions that are purely ministerial.

> When the particular conduct which caused the injury is one characterized by the high degree of discretion and judgment involved in weighing alternatives and making choices with respect to public policy and planning, governmental entities should remain immune from liability.

*Opinion of the Justices*, 126 N.H. 554, 563, 493 A.2d 1182, 1189 (1985). We have declined to draw a bright line between discretionary planning and the ministerial implementation of plans, however. Rather, we have stated that it would be "possible for workers to implement a faulty design or plan, for which no tort liability should result," but that "[i]f, on the other hand, workers negligently follow or fail to follow an established plan or standards, and injuries result, then a [government entity] could be subject to tort liability." *Gardner*, 137 N.H. at 258, 624 A.2d at 1340.

The trial court ruled that the DOT exercised its discretion when it established the warrant criteria for the installation of flashing beacons, but that its implementation of the warrant system did not involve exercise of the type of discretion protected by RSA 541-B:19. The court concluded that the State was not immune from liability because the plaintiffs challenged not the adoption, but rather the *implementation* of the warrant system. *See DiFruscia*, 136 N.H. at 205, 612 A.2d at 1328; *Nevada Power Co. v. Clark County*, 813 P.2d 477, 478 (Nev. 1991). We disagree.

■ ■ The TCSSP includes an introductory section that describes five basic considerations that the DOT employs to ensure the effectiveness of traffic control devices: design, placement, operation, maintenance, and uniformity. The warrant requirements at issue in this case are concerned with the fifth consideration, uniformity. According to the TCSSP,

> uniformity means treating similar situations in the same way. The use of uniform traffic control devices does not, in itself, constitute uniformity. A standard device used where it is not appropriate is as objectionable as a nonstandard device; in fact, this may be worse, in that such misuse may result in disrespect at those locations where the device is needed.

> The decision to use a particular device at a particular location must be made on the basis of an engineering study at the location. Thus, while the [TCSSP] describes the application of the various devices, it is not intended as a substitute for engineering judgment. Nor is it intended to discourage the imaginative application of the standards and principles which the [TCSSP] prescribes. Both engineering judgment and imaginative application are essential to true uniformity.

The TCSSP provides guidelines rather than mandates. It envisions circumstances under which, even though the minimum criteria for a particular warrant have been met, a traffic control device may not be installed. Further, the warrant at issue in this case is merely one of eight warrants that may indicate the need for a traffic control device: the TCSSP provides that no signals should be installed "unless one *or more* of the signal warrants . . . are met." The TCSSP does not eliminate the DOT's discretion with regard to traffic control. On the contrary, the TCSSP serves, when a warrant requirement has been met, as an invitation for the DOT to exercise discretion. *Cf. Sorenson v. City of Manchester*, 136 N.H. 692, 694, 621 A.2d 438, 439 (1993). As a discretionary function, the State's determination whether to install a flashing beacon at the intersection of Wellington Road and By-Pass 28 is immune. *See* RSA 541-B:19, I(c).

■ The city is likewise immune. "[D]ecisions regarding traffic control . . . rest on the exercise of judgment and discretion and represent planning and policymaking. They fit squarely within the category of discretionary functions entitled to municipal immunity." *Sorenson*, 136 N.H. at 694, 621 A.2d at 439-40; *see also Gardner*, 137

N.H. at 258, 624 A.2d at 1340 (setting of road maintenance standards a discretionary, policy function); *DiFruscia*, 136 N.H. at 205, 612 A.2d at 1328 (decision whether to place guardrails is discretionary function). The city's decisions regarding traffic control are entitled to municipal immunity.

*II. Duty to Monitor Intersection*

The plaintiffs also contend that both the city and the State owed Taillon a duty adequately to monitor accidents at the intersection once they had actual notice of the 1981 fatality, and that the city had a duty to notify the State of accidents it monitored. The trial court ruled that

> given the accident history of the subject intersection, both the City and the State failed to inspect the adequacy of the control and failed to insure that the control complied with the TCSSP. Moreover, as a result of their respective omissions, the City and the State negligently failed to protect motorists from a hazardous condition. The latter point is especially compelling with regard to the City's role. Following the denial of its request for the installation of a beacon, the City failed to make any further requests, failed to provide other safety measures on Wellington Road, and consequently failed to protect motorists from a hazard it had acknowledged in 1981.

(Citations omitted.) The plaintiffs allege that actual notice of a hazardous condition at the intersection would remove the city's and the State's conduct from the discretionary activity shield of municipal and sovereign immunity.

We have stated that "when a community has *actual notice* of a hazardous condition on its highways or sidewalks and has had *adequate opportunity* to correct the condition, protect travelers from injury, or warn public users of the hazard, those injured as a result should not be denied an opportunity to recover." *City of Dover v. Imperial Cas. & Indemn. Co.*, 133 N.H. 109, 120, 575 A.2d 1280, 1286 (1990). In *City of Dover*, we concluded that RSA 507-B:2 (1983) was unconstitutional because it denied "parties injured on municipal highways and sidewalks a right to recover as provided in part I, article 14" of the New Hampshire Constitution. *City of Dover*, 133 N.H. at 120, 575 A.2d at 1286-87. That statute provided that a governmental unit could be held liable for personal injury resulting from the unit's "fault or by fault attributable to it, arising out of ownership, occupation, maintenance or operation of . . . [a]ll premises, *except* public sidewalks, streets, [or] highways . . . ."

RSA 507-B:2 (1983). We suggested the notice requirement as a possible means of making such immunity constitutionally permissible. *See City of Dover,* 133 N.H. at 120, 575 A.2d at 1286-87. We have not stated that such a circumstance, *per se,* constitutes an exception to the discretionary immunity rule. *See Schoff,* 137 N.H. at 586, 630 A.2d at 784-85.

In *City of Dover,* the plaintiff had sustained her injuries by slipping and falling on "slippery substances" that had accumulated on a Dover sidewalk because of the city's allegedly negligent maintenance of the sidewalk. *City of Dover,* 133 N.H. at 111, 575 A.2d at 1281. In *Schoff,* we were interpreting a now superseded version of RSA 231:92 (1982), which addressed municipal liability for damages resulting from "traveling upon a bridge, culvert, or sluiceway, or dangerous embankments of which insufficient warning has been given . . . ." *Schoff,* 137 N.H. at 587, 630 A.2d at 785. In each of these cases, the conduct complained of was ministerial, rather than discretionary. *See id.* at 590, 630 A.2d at 786-87; *City of Dover,* 133 N.H. at 111, 575 A.2d at 1281.

 The management of safety precautions on State and municipal roads, with policies embodied in the TCSSP, involves governmental discretion at every turn. *Cf. Sorenson,* 136 N.H. at 694, 621 A.2d at 439-40. The decision to control the intersection of By-Pass 28 and Wellington Road by means of an oversized "Stop" sign, preceded by an international "Stop Ahead" sign and a diamond-shaped yellow warning "Slow" sign, was characterized by a "high degree of discretion and judgment involved in weighing alternatives and making choices with respect to public policy and planning." *Opinion of the Justices,* 126 N.H. at 563, 493 A.2d at 1189. The TCSSP bases for increasing the level of traffic control at the intersection include the occurrence of three accidents at the particular intersection during a one-year period, if those accidents are "of the type which may be reduced by the use of flashing beacons." Once we have reached the conclusion that the review of the *accident history* at intersections—and the subsequent determination whether such intersections would be made safer by an increase in traffic control—is a discretionary and planning function, it would defy logic to conclude that the *knowledge* of the accident history on the part of the governmental entity removes the decision-making process from immune status.

 The discretionary function exception to municipal immunity, grounded as it is in the doctrine of separation of powers, reflects our hesitance "to accept a jury's verdict as to the reasonableness and safety of a plan of governmental services and prefer it over the

judgment of the governmental body which originally considered and passed on the matter . . . ." *Gardner*, 137 N.H. at 256, 624 A.2d at 1339 (quotation and brackets omitted). "One of our primary concerns underlying the discretionary function exception [to municipal liability] is to limit judicial interference with legislative and executive decision-making." *Schoff*, 137 N.H. at 590, 630 A.2d at 787. Allowing a case like the instant one to proceed based on the theory of "actual notice of a hazardous condition" would allow certain plaintiffs completely to avoid the discretionary immunity allowed governmental entities. The management of some types of "hazardous conditions" is the purpose of the discretionary and planning activities of municipalities, as well as the DOT, with regard to roadway safety. *See Sorenson*, 136 N.H. at 694, 621 A.2d at 439-40. In this case, the activity in question is protected by discretionary immunity.

■ The fourth and fifth questions presented for our review stand on a slightly different footing. Insofar as the plaintiffs seek to hold the city liable for the management of its internal affairs—*i.e.*, the decision whether to "have a professional staff in place to keep track of accidents and make decisions in regard to signals at the intersection"—they must fail. If the ultimate decision regarding traffic controls at intersections within the jurisdiction rests within the city's discretion, *see id.*; *Gardner*, 137 N.H. at 258, 624 A.2d at 1340, we fail to see how the intermediate decisions regarding record keeping and staffing fall outside of that discretion.

■ We infer from the plaintiffs' pleadings in this case that the fourth and fifth questions concern whether the city failed adequately to monitor the intersection once it had decided to do so, and failed to report any accidents so monitored to the State. Even if the plaintiffs' pleadings may be construed as making such a claim, the city's actions are immune. Based on the allegations made in this case, the decision to monitor intersections, as a part of the city's overall policy of traffic control and safety, along with any actions it took pursuant to this decision, were discretionary acts.

*Reversed and remanded.*

BATCHELDER, J., retired, sat by special assignment under RSA 490:3; all concurred.