37 A.3d 436 (2012)
Steven FORD
v.
NEW HAMPSHIRE DEPARTMENT OF TRANSPORTATION & a.
No. 2011-262.
Supreme Court of New Hampshire.
Argued: January 18, 2012.
Opinion Issued: February 24, 2012.
*439 D'Angelo & Hashem, LLC of Boston, Massachusetts (Stephen L. D'Angelo and Jay M. Wolman on the brief, and Mr. D'Angelo orally), and Cossingham Law Office, P.C., of Andover, Massachusetts (Thomas C. LaPorte on the brief), for the plaintiff.
*440 Michael A. Delaney, attorney general (Kevin H. O'Neill, assistant attorney general, and Mark P. Hodgdon, senior assistant attorney general, on the memorandum of law, and Mr. O'Neill orally), for defendant New Hampshire Department of Transportation.
Devine, Millimet & Branch, P.A., of Manchester (Robert C. Dewhirst on the brief and orally), for defendant Town of Windham.
CONBOY, J.
The plaintiff, Steven Ford, appeals orders of the Superior Court (Nadeau, J.) dismissing his negligence claims against the defendants, Town of Windham (Town) and the New Hampshire Department of Transportation (DOT). We affirm.
For the purposes of this appeal, we accept the following allegations from the plaintiff's writ as true. At approximately 11:30 p.m. on December 12, 2008, the vehicle in which the plaintiff was a passenger was struck by another vehicle at the intersection of Routes 111 and 28 in Windham. Earlier, a severe ice storm had caused a power outage that had rendered the street and crossing lights at this intersection inoperable.
Several hours before the accident occurred, both DOT and the Town had received notice that the intersection's lights were inoperable because of the ice storm. At approximately 6:42 a.m., Windham police notified DOT of a traffic hazard in the area. At approximately 1:08 p.m., a motor vehicle accident at the same intersection was reported to Windham police, who later reported that there were "[n]o working lights at this intersection due to ice storm power outages."
The accident caused the plaintiff to suffer severe injuries, and he sued the Town and DOT for negligence. Both defendants moved to dismiss. In its motion, the Town averred that both Route 111 and Route 28 were state highways, which the Town neither owned nor had a duty to maintain. See RSA 231:93 (2009) ("Municipalities shall not be deemed to have any duty of care whatsoever with respect to the construction, maintenance or repair of class I, III, III-a or VI highways, or state maintained portions of class II highways."). The Town asserted that at the point where the two highways intersect in Windham, Route 111 is classified as a class II highway, and Route 28 is classified as a class I highway. See RSA 229:5 (2009) (defining classification of highways). Because the accident occurred on these state highways, the Town argued that it owed no duty to the plaintiff to warn of any hazardous condition that might have existed on them because of the December 2008 ice storm. See Trull v. Town of Conway, 140 N.H. 579, 582, 669 A.2d 807 (1995); see also RSA 231:93.
In its motion, DOT contended, among other things, that it had discretionary function immunity to decide how best to allocate its resources in a "severe widespread winter weather emergency." See Appeal of N.H. Dep't of Transp., 159 N.H. 72, 74-75, 977 A.2d 451 (2009). The trial court granted both motions, and this appeal followed.
In reviewing a motion to dismiss on appeal, we examine whether the allegations in the plaintiff's writ are reasonably susceptible of a construction that would permit recovery. J & M Lumber & Constr. Co. v. Smyjunas, 161 N.H. 714, 724, 20 A.3d 947 (2011). We assume the plaintiff's factual allegations to be true and construe all reasonable inferences to be drawn from them in the light most favorable to him. Id. We need not, however, assume the truth of statements that are merely conclusions of law. Id. We then *441 engage in a threshold inquiry that tests the facts in the writ against the applicable law and will affirm the trial court's dismissal if the writ's allegations do not constitute a basis for legal relief. Id.
Before addressing the parties' arguments, we note that the parties appear to assume that warning motorists about inoperable traffic lights is part of a governmental entity's duty to maintain a road. For the purposes of deciding this appeal only, we will accept that assumption.

I. Negligence Claim Against Town

A. Trull
We first address the trial court's dismissal of the plaintiff's claim against the Town. The trial court decided that our decision in Trull required dismissal of the plaintiff's claim. In Trull, we ruled that a town could not be held liable in negligence for an accident occurring on Route 113, a class II highway, because the town had no control over the road, no duty to repair and maintain it, and, therefore, no duty to warn of icy conditions on it. Trull, 140 N.H. at 581, 582, 669 A.2d 807; see RSA 231:93. Trull is consistent with an earlier case, Hartman v. Town of Hooksett, 125 N.H. 34, 480 A.2d 12 (1984), in which we held that neither a municipality nor its police force had a duty to warn travelers about a defect in a class I state highway. In Hartman, we reasoned that "[i]n certain circumstances, a town may be liable for injuries occurring on roads under its control, but not for injuries on roads over which it exercises no control." Hartman, 125 N.H. at 37, 480 A.2d 12.
Contrary to the plaintiff's assertions, Trull is directly on point. Like the plaintiff in this case, the Trull plaintiffs argued that the town had a duty to warn of a dangerous condition of which it had actual knowledge. Trull, 140 N.H. at 581, 669 A.2d 807. In Trull, before the accident occurred, a town police officer observed that a vehicle had slid on Route 113 because of black ice. Id. at 580-81, 669 A.2d 807. Shortly after the officer left the area, one of the plaintiffs lost control of his vehicle, which slid across the center line and into another vehicle driven by the other plaintiff. Id. at 581, 669 A.2d 807. We disagreed with the Trull plaintiffs' argument, ruling that the fact that Route 113 is a class II highway was dispositive: "Under the common law of this State and the statutory scheme in existence at the time of the accident, we conclude that the town had no duty to warn of icy conditions on a road over which it had no control and no duty to repair and maintain." Id. at 582, 669 A.2d 807.
Similarly here, the Town has averred, and the plaintiff has not disputed, that where they intersect in Windham, Routes 111 and 28 are class II and class I state highways, respectively, which the Town does not own and has no duty to maintain. Accordingly, because the Town had no duty to maintain Routes 111 and 28, it also had no duty to warn motorists that the lights at the intersection of these two state highways were inoperable. See id.; see also RSA 231:93. As we concluded in Trull: "Where there is no duty to correct a condition[,] there is no actionable duty to warn users of a highway that the condition has not been corrected." Trull, 140 N.H. at 582, 669 A.2d 807. And, "[w]hen there is no legal duty, there can be no breach of duty, and no finding of negligence." Id. (quotation omitted).
The plaintiff's attempts to distinguish Trull from the instant case are unavailing. He asserts, for instance, that Trull is distinguishable because in Trull, nature directly caused the icy conditions, while in this case, the traffic lights were rendered inoperable because of a power outage *442 caused by an ice storm. We do not find this distinction to be meaningful.
Because the plaintiff views Trull as distinguishable from this case, he revives two arguments that we rejected in Trull. First, he argues that municipal police officers had a duty to "act," knowing that the lights at the intersection were inoperable and that the intersection was "heavily travelled." At oral argument, he explained further that because the Town's police officers travel and regulate traffic on Routes 111 and 28, they had a duty to warn motorists of the dangerous condition caused by the inoperable lights. The Trull plaintiffs made a similar argument, which we rejected. As we explained in Trull, "Merely because the town's police officers travel and regulate traffic upon [these] State highway[s] ... does not create a duty to warn the public" about a dangerous condition on a state highway. Id. at 582, 669 A.2d 807.
Relying upon Restatement (Second) of Torts § 323 (1965), the plaintiff next argues that the Town had a duty to warn motorists because it voluntarily assumed a duty to motorists on Routes 111 and 28 by "render[ing] services to the public." We rejected a comparable claim in Trull, explaining that while "[t]his court has recognized the general tort principle that one who voluntarily assumes a duty thereafter has a duty to act with reasonable care," the facts alleged by the plaintiffs did not allow us to conclude that the town undertook the task of warning motorists about the icy condition. Trull, 140 N.H. at 583, 669 A.2d 807 (quotation omitted); see Restatement (Second) of Torts, supra § 323, at 135. Likewise, here, on the facts alleged by the plaintiff, we cannot conclude that the Town undertook the task of warning motorists on Routes 111 and 28 of the inoperable traffic lights. Trull, 140 N.H. at 583, 669 A.2d 807; see Hartman, 125 N.H. at 37, 480 A.2d 12.
Alternatively, the plaintiff urges us to overrule Trull. "The doctrine of stare decisis demands respect in a society governed by the rule of law, for when governing legal standards are open to revision in every case, deciding cases becomes a mere exercise of judicial will with arbitrary and unpredictable results." Jacobs v. Director, N.H. Div. of Motor Vehicles, 149 N.H. 502, 504, 823 A.2d 752 (2003) (quotations omitted). "[W]hen asked to reconsider a holding, the question is not whether we would decide the issue differently de novo, but whether the ruling has come to be seen so clearly as error that its enforcement was for that very reason doomed." State v. Quintero, 162 N.H. 526, 539, 34 A.3d 612 (2011) (quotation omitted). Thus, we will overturn a decision only after considering: (1) whether the rule has proven to be intolerable simply by defying practical workability; (2) whether the rule is subject to a kind of reliance that would lend a special hardship to the consequence of overruling; (3) whether related principles of law have so far developed as to have left the old rule no more than a remnant of abandoned doctrine; and (4) whether facts have so changed, or come to be seen so differently, as to have robbed the old rule of significant application or justification. Id. at 532-33, 34 A.3d 612. Although these factors guide our judgment, no single factor is wholly determinative, because the doctrine of stare decisis is not one to be either rigidly applied or blindly followed. Id. at 533, 34 A.3d 612.
The plaintiff's sole argument as to why we should overrule Trull is that, in his opinion, it is badly reasoned. Even if we were to agree with the plaintiff, which we do not, merely because an opinion is poorly reasoned does not, in and of itself, justify overruling it. See id. at 538-40, 34 *443 A.3d 612. "[P]rincipled application of stare decisis requires a court to adhere even to poorly reasoned precedent in the absence of some special reason over and above the belief that a prior case was wrongly decided." Id. at 539, 34 A.3d 612 (quotation omitted). The determination that an opinion was poorly reasoned is merely the starting point for a stare decisis analysis. Id. Upon concluding that a case was poorly reasoned, the court then invokes the four stare decisis factors to decide whether to adhere to the precedent or overrule it, but the "well-reasoned" inquiry is not itself part of the analysis. Id.
Having failed to brief any of the four stare decisis factors, the plaintiff has not persuaded us that our decision in Trull must be overruled. Cf. Rallis v. Demoulas Super Markets, 159 N.H. 95, 103, 977 A.2d 527 (2009). We, therefore, decline his invitation to do so.

B. Statutory Bases for Duty to Warn
The plaintiff argues that notwithstanding Trull, the Town had a statutory duty imposed by RSA 507-B:2 (2010), RSA 231:90 to :93 (2009), and/or by RSA 21-P:44 (Supp.2011) to warn motorists about the inoperable lights. He is mistaken on all three counts.
The interpretation of a statute is a question of law, which we review de novo. Billewicz v. Ransmeier, 161 N.H. 145, 151, 13 A.3d 116 (2010). We are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. Appeal of Wilson, 161 N.H. 659, 662, 20 A.3d 1006 (2011). We first examine the language of the statute and ascribe the plain and ordinary meanings to the words used. Id. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language the legislature did not see fit to include. Id. Furthermore, we interpret statutes in the context of the overall statutory scheme and not in isolation. Id. "In so doing, we are better able to discern the legislature's intent, and therefore better able to understand the statutory language in light of the policy sought to be advanced by the entire statutory scheme." Id. (quotation omitted).

1. RSA 507-B:2
RSA 507-B:2 provides:
A governmental unit may be held liable for damages in an action to recover for bodily injury, personal injury or property damage caused by its fault or by fault attributable to it, arising out of ownership, occupation, maintenance or operation of all motor vehicles, and all premises; provided, however, that the liability of any governmental unit with respect to its sidewalks, streets, and highways shall be limited as provided in RSA 231 and the liability of any governmental unit with respect to publicly owned airport runways and taxiways shall be limited as set forth in RSA 422.
(Emphasis added.)
The plaintiff contends that "the Town ... owed him a duty under RSA 507-B:2 ... for operating and occupying the intersection in question." He argues that "[i]n policing the intersection and the roads, [the Town] both occupied and operated them." By its express terms, however, RSA 507-B:2 does not, alone, govern the Town's liability "with respect to its sidewalks, streets, and highways"; rather, RSA 507-B:2 must be read in conjunction with the limits on governmental liability set forth in RSA chapter 231. See Richard v. Pembroke Sch. Dist., 151 N.H. 455, 859 A.2d 1157 (2004). Accordingly, RSA 507-B:2 does not, as the plaintiff contends, *444 in and of itself, impose any duty upon the Town with respect to Routes 111 and 28.

2. RSA chapter 231
Nothing in RSA chapter 231 imposes such a duty upon the Town, either. The liability of municipalities with respect to "sidewalks, streets, and highways" is set forth in RSA 231:90 through RSA 231:93. RSA 231:93 expressly provides that municipalities do not "have any duty of care whatsoever with respect to the construction, maintenance or repair of class I, III, III-a or VI highways, or state maintained portions of class II highways." A municipality's duty of care with respect to the construction, maintenance or repair of class IV and V highways is set forth in RSA 231:90, :91, :92, and :92-a. However, even with respect to class IV and V highways:
a municipality or school district shall not be held liable for damages arising from insufficiencies or hazards on public highways, bridges, or sidewalks, even if it has actual notice or knowledge of them, when such hazards are caused solely by snow, ice, or other inclement weather, and the municipality's or school district's failure or delay in removing or mitigating such hazards is the result of its implementation, absent gross negligence or reckless disregard of the hazard, of a winter or inclement weather maintenance policy or set of priorities adopted in good faith by the officials responsible for such policy; and all municipal or school district employees and officials shall be presumed to be acting pursuant to such a policy or set of priorities, in the absence of proof to the contrary.
RSA 231:92-a.
The plaintiff argues that RSA 231:91 and RSA 231:92 impose a duty upon the Town with respect to Routes 111 and 28 because RSA 231:91 and RSA 231:92, unlike RSA 231:90, do not refer explicitly to class IV and V highways. RSA 231:90, I, begins, "Whenever any class IV or class v. highway or bridge or sidewalk thereon in any municipality shall be insufficient, any person may give written notice of such insufficiency to one of the selectmen or highway agents of the town, or the mayor or street commissioners of the city, and a copy of said notice to the town or city clerk." (Emphasis added.)
RSA 231:91, I, then provides:
Upon receipt of such notice of insufficiency, and unless the highway agents or street commissioners determine in good faith that no such insufficiency exists, the municipality shall immediately cause proper danger signals to be placed to warn persons by day or night of such insufficiency, and shall, within 72 hours thereafter, develop a plan for repairing such highway, bridge, or sidewalk and shall implement such plan in good faith and with reasonable dispatch until the highway, bridge, or sidewalk is no longer insufficient, as defined by RSA 231:90, II.
(Emphases added.)
RSA 231:92 likewise does not expressly refer to class IV and V highways. Rather, it provides, in pertinent part, that "[a] municipality shall not be held liable for damages in an action to recover for personal injury or property damage arising out of its construction, maintenance, or repair of public highways and sidewalks constructed thereupon unless such injury or damage was caused by an insufficiency, as defined by RSA 231:90," and certain conditions are met. RSA 231:92, I.
The plaintiff argues that because RSA 231:91 and RSA 231:92 do not refer to class IV and V highways, they, unlike RSA 231:90, apply "to all highways in [a] municipality." However, we cannot read these statutes in isolation, but must read them in *445 context. See Appeal of Wilson, 161 N.H. at 662, 20 A.3d 1006. Thus, in RSA 231:91, the reference to "such insufficiency" and, in RSA 231:92, to "an insufficiency" are references to the insufficiencies described in RSA 231:90, which, by the plaintiff's own admission, apply only to insufficiencies in class IV and V highways. Similarly, the reference in RSA 231:91 to "such highway" is a reference to the highways, which are "insufficient, as defined by RSA 231:90, II." Moreover, the plaintiff's interpretation runs afoul of RSA 231:93, which provides that a municipality has no duty of care whatsoever with respect to highway classes other than classes IV and V and town-maintained portions of class II highways.

3. RSA 21-P:44
The plaintiff contends that under RSA 21-P:44, the Town had a duty to respond to the emergency situation created by the ice storm of December 2008 by warning motorists of the inoperable traffic lights. RSA 21-P:44 provides:
In carrying out the provisions [related to "Homeland Security and Emergency Management"], the governor, executive heads of state agencies, and local executive officers of the political subdivisions of the state shall utilize the services, equipment, supplies, and facilities of existing departments, offices, and agencies of the state and its political subdivisions to the maximum extent practicable, and the officers and personnel of all such departments, offices, and agencies are directed to cooperate with and extend such services and facilities to the governor and to the emergency management organizations of the state upon request.
The plaintiff observes that RSA 21-P:44 is part of a statutory scheme that "create[s] structures to enable response to an emergency situation." He argues: "The statute [RSA 21-P:44] uses the mandatory phrase `shall' and imposes the broadest requirements of acting `to the maximum extent practicable.'" He contends that because "[i]t was practicable for the Town to earlier address the inoperable signal[s]," RSA 21-P:44 required it do so. In his reply brief, the plaintiff changes this argument somewhat by asserting that the Town violated RSA 21-P:44 by failing to use the State's "services, equipment, supplies and facilities" to warn motorists about the inoperable traffic lights.
We need not decide whether the plaintiff's interpretation of RSA 21-P:44 is correct, for even if it is, it is a well-settled rule that to the extent two statutes conflict, the more specific statute, here RSA 231:93, controls over the general statute, RSA 21-P:44. See In the Matter of Heinrich & Curotto, 160 N.H. 650, 654-55, 7 A.3d 1158 (2010). Although RSA 21-P:44 and other provisions in RSA chapter 21-P governing "Homeland Security and Emergency Management" refer generally to the power, duty and authority of political subdivisions when the State has experienced certain "natural and human-caused disasters," RSA 21-P:34 (Supp.2011), RSA 231:93 specifically provides that a municipality owes no duty of care with respect to class I and State-maintained portions of class II state highways.

II. Negligence Claim Against DOT
We now turn to the trial court's dismissal of the plaintiff's claim against DOT. The plaintiff argues that the trial court erred when it found that his claim concerns DOT's discretionary function and, on that basis, ruled that DOT was immune from liability. We disagree.
Under discretionary function immunity, the State and its agencies are immune from liability for conduct that involves "the exercise or performance or the *446 failure to exercise or perform a discretionary executive or planning function or duty on the part of the state or any state agency or a state officer, employee, or official acting within the scope of his office or employment." RSA 541-B:19, I(c) (2007). The existence of immunity for discretionary functions is fundamental to our system of separation of powers. Appeal of N.H. Dep't of Transp., 159 N.H. at 74, 977 A.2d 451. "Discretionary function immunity is premised upon the notion that certain essential, fundamental activities of government must remain immune from tort liability so that our government can govern." Id. (quotation omitted). "[I]t seeks to limit judicial interference with legislative and executive decision-making because to accept a jury's verdict as to the reasonableness and safety of a plan of governmental services and prefer it over the judgment of the governmental body which originally considered and passed on the matter would be to obstruct normal governmental operations." Tarbell Adm'r, Inc. v. City of Concord, 157 N.H. 678, 684, 956 A.2d 322 (2008) (quotations, citation and brackets omitted).
"In resolving discretionary immunity questions, we distinguish between planning or discretionary functions and functions that are purely ministerial." Appeal of N.H. Dep't of Transp., 159 N.H. at 74, 977 A.2d 451 (quotation omitted). "When the particular conduct which caused the injury is one characterized by the high degree of discretion and judgment involved in weighing alternatives and making choices with respect to public policy and planning, governmental entities should remain immune from liability." Id. (quotation omitted); see also Everitt v. Gen. Elec. Co., 156 N.H. 202, 220, 932 A.2d 831 (2007) (discretionary functions falling within the protection of the discretionary function immunity doctrine "are limited to discretionary decisions involving ... policy-making or planning.").
DOT argues that deciding how best to plan and allocate limited State resources in response to widespread power outages caused by a severe ice storm is a discretionary function entitled to immunity. We agree. As DOT explains: "Decisions regarding the setting of priorities and alternatives to responding to severe winter weather ... require numerous planning and policy choices and alternatives, involving safety, economic, equipment, debris and personnel factors." Such decisions "rest on the exercise of judgment and discretion and represent planning and policymaking. They fit squarely within the category of discretionary functions entitled to... immunity." Sorenson v. City of Manchester, 136 N.H. 692, 694, 621 A.2d 438 (1993).
Our conclusion is consistent with our cases on this issue. See Appeal of N.H. Dep't of Transp., 159 N.H. at 75, 977 A.2d 451 (DOT's detour plan protected by discretionary function immunity because it involved weighing alternatives and making choices with respect to public policy); Bergeron v. City of Manchester, 140 N.H. 417, 422, 666 A.2d 982 (1995) (State's decision as to whether to install flashing beacon at certain intersection is discretionary function entitled to immunity); Sorenson, 136 N.H. at 694, 621 A.2d 438 (decisions regarding traffic control and parking regulations are discretionary functions entitled to immunity); DiFruscia v. N.H. Dept. of Pub. Works & Highways, 136 N.H. 202, 205, 612 A.2d 1326 (1992) ("We do not doubt that the decision to place or not to place a guardrail on a roadway is conduct characterized by the high degree of discretion and judgment involved in weighing alternatives and making choices with respect to public policy and planning." (quotation omitted)).
*447 The plaintiff argues that the negligence he alleges concerns DOT's failure to carry out a ministerial act, not a discretionary function. He contends that DOT was required to abide by section 4D.02D of the 2003 edition of the Federal Manual on Uniform Traffic Control Devices (MUTCD), see Fed. Highway Admin., U.S. Dep't of Transp., Manual On Uniform Traffic Control Devices, at page 4D-1 (2003) available at http://mutcd.fhwa.dot. gov/pdfs/2003r1r2/coverintrotoc.pdf, and that its failure to do so constitutes a failure to implement State policy. See Everitt, 156 N.H. at 211, 932 A.2d 831 (explaining that in assessing whether discretionary function immunity applies, we distinguish between policy decisions involving the consideration of competing economic, social, and political factors, and operational or ministerial decisions required to implement policy decisions). Assuming, without deciding, that section 4D.02D of the MUTCD even applies when traffic lights are rendered inoperable by an ice storm, we disagree that this provision established a mandatory duty.
The MUTCD is published by the United States Department of Transportation's Federal Highway Administration under 23 Code of Federal Regulations, Part 655, Section F and has been adopted by the DOT. See State v. Downs, 157 N.H. 695, 696-97, 958 A.2d 985 (2008). Section 4D.02 of the 2003 edition of the MUTCD provides, in pertinent part:
Section 4D.02 Responsibility for Operation and Maintenance Guidance:
Prior to installing any traffic control signal, the responsibility for the maintenance of the signal and all of the appurtenances, hardware, software, and the timing plan(s) should be clearly established. The responsible agency should provide for the maintenance of the traffic control signal and all of its appurtenances in a competent manner.
To this end the agency should:

...
D. Provide for alternate operation of the traffic control signal during a period of failure, using flashing mode or manual control, or manual traffic direction by proper authorities as might be required by traffic volumes or congestion, or by erecting other traffic control devices.
MUTCD, supra at 4D-1 (emphases added).
The plain language of this section does not create a mandatory duty. "[W]hile the word `shall' establishes a mandatory duty, the word `should' requires [DOT] to use its discretion and ... judgment." Dunlap v. W.L. Logan Trucking, Co., 161 Ohio App.3d 51, 829 N.E.2d 356, 361 (2005) (interpreting Ohio's state manual); Lawton v. City of Pocatello, 126 Idaho 454, 886 P.2d 330, 337-38 (1994) (interpreting earlier version of MUTCD). As the introduction to the MUTCD explains, those portions of the manual that are termed "Guidance" refer to "a statement of recommended, but not mandatory, practice in typical situations...." MUTCD, supra at I-3. By contrast, those portions of the manual that are designated "Standards" refer to "a statement of required, mandatory, or specifically prohibitive practice regarding a traffic control device." Id. at I-2; see Johnson v. Agency of Transp., 180 Vt. 493, 904 A.2d 1060, 1063 (2006) (only MUTCD "Standards" are binding on Vermont's Agency of Transportation). The MUTCD provision upon which the plaintiff relies is "Guidance," and is, "therefore only a recommended practice, not a mandate upon government decision makers." Dane County v. O'Malley, No. 2008AP59, 2008 WL 2468666, at *2 (Wis.Ct.App. June 19, 2008).
*448 We rejected a similar argument in Bergeron, 140 N.H. at 422-23, 666 A.2d 982. In Bergeron, the manual at issue was a State publication setting forth traffic control standards, statutes and policies. Bergeron, 140 N.H. at 419, 666 A.2d 982. Although the manual suggested that a flashing beacon is warranted when three accidents occur at a particular intersection during a one-year period, the State elected not to install a flashing beacon at the intersection at issue even though four accidents occurred at the intersection between December 1985 and December 1986. Id. at 419-20, 666 A.2d 982. The trial court concluded that DOT was not entitled to discretionary function immunity because the plaintiffs did not challenge the adoption of the DOT's policy regarding installing flashing beacons, but rather challenged DOT's implementation of this policy. Id. at 421, 666 A.2d 982. We disagreed, in part, because the manual in Bergeron "provide[d] guidelines rather than mandates." Id. at 422, 666 A.2d 982. It "[did] not eliminate the DOT's discretion with regard to traffic control," but rather "invit[ed]... the DOT to exercise discretion." Id. Similarly here, the MUTCD does not eliminate DOT's discretion with regard to responding to traffic lights rendered inoperable because of severe, winter weather-related widespread power outages.
For all of these reasons, therefore, we affirm the trial court's dismissal of the plaintiff's negligence claims.
Affirmed.
DALIANIS, C.J., and HICKS, J., concurred; LYNN, J., concurred specially.
LYNN, J., concurring specially.
While I have a different view from the majority concerning the factors that may be considered in determining whether to overrule precedent, see State v. Quintero, 162 N.H. 526, 543-47, 34 A.3d 612 (2011) (Lynn, J., concurring specially), I agree that in this case there are no sound reasons for failing to adhere to our decision in Trull v. Town of Conway, 140 N.H. 579, 669 A.2d 807 (1995). With this caveat, I join the opinion of the court.