# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

## In Case No. 2022-0553, <u>Appeal of Michael G. Cross</u>, the court on May 14, 2024, issued the following order:

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(2). The petitioner, Michael G. Cross, appeals a decision of the New Hampshire Board of Claims (Board) that his negligence claim against the respondents, the New Hampshire Office of Professional Licensure and Certification (OPLC), the New Hampshire Department of Health and Human Services (DHHS), and the New Hampshire Department of Administrative Services (DAS), for injuries he sustained when he slipped and fell on ice in the parking lot adjacent to the OPLC, was barred by discretionary function immunity. We reverse and remand.

The record supports the following facts. Just before 8 a.m. on February 18, 2019, the petitioner slipped and fell on black ice covered by a light dusting of snow in the parking lot next to the OPLC building, sustaining a serious head injury. The petitioner was there to drop off licensing paperwork. That day was a state holiday, and, unbeknownst to the petitioner, OPLC was closed.

On February 3, 2021, the petitioner filed a claim with the Board, alleging negligence on the part of the OPLC. Upon learning that DAS had entered into a Memorandum of Agreement (MOA) with DHHS, under which the petitioner claims DAS assumed, among other things, DHHS' responsibility for snow and ice removal for the parking lot where he fell, the petitioner successfully moved to add DHHS and DAS as parties.

The Board held a merits hearing on December 10, 2021. At the hearing, the DAS Superintendent of Grounds (Superintendent) for the Governor Hugh Gallen Office Park — the location where the petitioner fell — testified that treatment priority of the parking lots depends on, among other factors, the timing and severity of the snowstorm.

In January 2022, the Board issued an order finding that the OPLC's negligent failure to treat the parking lot was the cause of the petitioner's injuries, and that discretionary function immunity did not bar his claim. OPLC moved for rehearing. In May 2022, the Board reversed its initial determination that discretionary function immunity did not apply. The Board found that, based on a review of the Superintendent's testimony, there was sufficient

evidence to conclude that discretionary function immunity was applicable. The Board reasoned that the Superintendent's testimony demonstrated that he and his crew "had the discretion, via policies and procedures, to determine when and how to salt and sand on a Federal holiday after a dusting of snow." The petitioner subsequently moved for rehearing, which the Board denied. This appeal followed.

On appeal, the petitioner argues that the Board misinterpreted and misapplied our discretionary function immunity law. The respondents counter that the Board did not err when it determined that the Superintendent's decisions about how and when to treat the parking lots were immune discretionary functions. We agree with the petitioner.

Our standard of review is set forth by statute. "[T]he burden of proof shall be upon the party seeking to set aside any order or decision of the [Board] to show that the same is clearly unreasonable or unlawful, and all findings of the [Board] upon all questions of fact properly before it shall be deemed to be prima facie lawful and reasonable." RSA 541:13 (2021). "[T]he order or decision appealed from shall not be set aside or vacated except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable." Id.

Under discretionary function immunity, the State and its agencies are immune from liability for conduct that involves "the exercise or performance or the failure to exercise or perform a discretionary executive or planning function or duty on the part of the state or any state agency or a state officer, employee, or official acting within the scope of his office or employment." RSA 541-B:19, I(c) (2021). Discretionary function immunity is premised upon the notion that certain essential, fundamental activities of government must remain immune from tort liability so that our government can govern. Ford v. N.H. Dep't of Transp., 163 N.H. 284, 294 (2012).

In resolving discretionary function immunity questions, we distinguish between planning or discretionary functions and functions that are purely ministerial. Appeal of N.H. Dep't of Transp., 159 N.H. 72, 74 (2009). When the particular conduct which caused the injury is one characterized by the high degree of discretion and judgment involved in weighing alternatives and making choices with respect to public policy and planning, governmental entities should remain immune from liability. Opinion of the Justices, 126 N.H. 554, 563 (1985). In particular, we distinguish between policy decisions involving the consideration of competing economic, social, and political factors on the one hand, and operational or ministerial decisions required to implement the policy decisions on the other hand. Everitt v. Gen. Elec. Co., 156 N.H. 202, 211 (2007). Ministerial functions are functions that are absolute, certain, and imperative, involving merely the execution of a set task.

Maryea v. Velardi, 168 N.H. 633, 638 (2016). Immunity extends only to decisions, acts, and omissions for which attaching liability would permit judicial second-guessing of the governing functions of another branch of government. Everitt, 156 N.H. at 211.

The respondents argue that because the Superintendent had discretion to determine how best to allocate limited State resources between various government buildings and could prioritize, in the interest of public safety, the sequence in which the parking lots were treated, the decision to make the parking lot where the petitioner fell a "low priority" involved the evaluation of economic and political considerations entitled to discretionary function immunity. The petitioner, however, asserts that the MOA established a formal State policy regarding snow and ice removal, and that the Superintendent's actions were merely ministerial. We find that independent of whether there was a State policy regarding maintenance of the parking lot, the Superintendent's decisions are not entitled to discretionary function immunity.

Although the Superintendent's decisions about how to prioritize certain areas based on the severity and the timing of a storm involved discretion, the exercise of that discretion, even to a significant degree, is not the sole factor for determining whether government conduct constitutes a discretionary function. Everitt, 156 N.H. at 213. We find Everitt instructive. There, we held that discretionary function immunity did not preclude liability for police officers' decision not to detain an individual, even though the decision required the officers to use "their trained judgment, experience and discretion" and "[t]heir decision was not menial, rote or automatic." Id. at 213-14, 222. In Everitt, we reasoned that, because the officers' decision did not involve municipal governing, subjecting the town to liability would not be "tantamount to judicial interference with legislative or executive decision-making" and, therefore, discretionary function immunity did not apply. Id. at 214.[1]

Here, as in Everitt, although the Superintendent's decisions as to the timing and sequence of snow removal and treatment involved the exercise of discretion, they did not involve the exercise of either legislative or executive decision-making, the judicial interference with which would compromise our system of separation of powers. Id. Deciding the order in which to treat the parking lots does not involve the high degree of discretion and judgment with

---

[1] Unlike State discretionary function immunity, municipal discretionary function immunity has not been codified by statute. Nonetheless, the standards governing the two are not materially different; in fact, we have previously found decisions in one area instructive in the other. See Gardner v. City of Concord, 137 N.H. 253, 257 (1993) (municipal discretionary function immunity case citing DiFruscia v. N.H. Dept. of Public Works, 136 N.H. 202, 203 (1992), a State discretionary function immunity case); Ford v. N.H. Dep't of Transp., 163 N.H. 284, 294-96 (2012) (State discretionary function immunity case relying on Everitt v. Gen. Elec. Co., 156 N.H. 202, 220 (2007), a municipal discretionary function immunity case); Bergeron v. City of Manchester, 140 N.H. 417, 421 (1995) (addressing the city and the State's immunity questions together).

3

respect to public policy and planning that must be present in order for the State to be entitled to discretionary function immunity. The cases in which we have found State action entitled to discretionary function immunity are distinguishable in that they involve the exercise of executive or legislative policy judgment. See DiFruscia v. N.H. Dept. of Pub. Works & Highways, 136 N.H. 202, 205 (1992) (finding decision to place or not to place guardrail on a roadway is an immune discretionary function); Appeal of N.H. Dep't of Transp., 159 N.H. at 74-75 (finding State's detour plan, which included weighing input from city on where to place signs along route as well as vehicle weight and clearance limitations, is an immune discretionary function); Bergeron v. City of Manchester, 140 N.H. 417, 422 (1995) (finding decision as to whether to install flashing beacon at an intersection is a discretionary function entitled to immunity); Maryea, 168 N.H. at 638-69 (finding decision not to require seatbelts in inmate transport van is an immune discretionary function because it involved "weighing alternatives and making choices with respect to public policy and planning" (quotation omitted)). In short, the decision-making by the Superintendent was not of the kind that discretionary function immunity was designed to protect.

The respondents cite Ford in arguing that the Superintendent's decisions about prioritizing salting and sanding of different areas are entitled to discretionary function immunity. In Ford, we held that the State's decision about how to allocate its resources in response to a severe ice storm was a discretionary function entitled to immunity. Ford, 163 N.H. at 295-96. However, Ford is distinguishable given that the nature, timing, and scope of the State's decision-making in Ford are materially different from the nature, timing, and scope of the decisions made in the case before us. The plaintiff in Ford was injured while he was a passenger in a vehicle that was struck by another vehicle more than sixteen hours after a severe ice storm had caused widespread power outages and rendered traffic lights inoperable. Ford, 163 N.H. at 287. There had been a similar accident at that same intersection earlier that day and the New Hampshire Department of Transportation (DOT) had known for more than sixteen hours that the traffic lights at the intersection in question were not working. Id. The DOT made executive decisions about how to deploy limited resources in an emergency in the aftermath of the storm — yet it had not remedied the inoperable traffic lights at that intersection despite having known about the problem for more than sixteen hours. See id. at 287, 295.

In Ford we emphasized that discretionary function immunity is designed to "limit judicial interference with legislative and executive decision-making because to accept a jury's verdict as to the reasonableness and safety of a plan of governmental services and prefer it over the judgment of the governmental body which originally considered and passed on the matter would be to obstruct normal governmental operations." Id. at 294-95 (quotation omitted).

Unlike <u>Ford</u>, the record before us does not demonstrate that the State exercised a high degree of legislative or executive judgment in response to a severe weather emergency. The weather conditions here did not constitute an emergency that required the weighing of alternatives and a high degree of executive decision-making by the State. The parties agree that the parking lot where the petitioner fell was covered by a light dusting of snow over ice. Additionally, in contrast to <u>Ford</u>, there is no evidence in the record here that the State had actual notice of the condition of the parking lot where the petitioner fell, considered the matter, and made a policy decision to allocate its limited resources elsewhere. Instead, at the Board hearing, the Superintendent merely testified that it was customary to "try to [treat] the hospital [parking lot] first" and stated that he was not aware of where that prioritization came from, only that "[t]hat's how it's always been done."

While it is undeniable that the Superintendent was able to exercise discretion in his role, the challenged decisions, acts, and omissions which underlie the petitioner's claim are not of the nature that would implicate judicial second-guessing of the governing functions of another branch of government. See <u>Everitt</u>, 156 N.H. at 211. Implicit in the court's ruling in <u>Ford</u> is that within the extended period between when the DOT knew the traffic lights were inoperable and when the accident giving rise to the suit occurred, the DOT weighed alternatives and made an executive decision regarding how to deploy its resources thereby satisfying our requirements for discretionary function immunity. See <u>Ford</u>, 163 N.H. at 295. There is no evidence in the record before us that a similar weighing occurred on the day in question or that an executive decision akin to the one we deemed an immune discretionary function in <u>Ford</u> was made. Although "the line between ministerial and planning or discretionary functions is sometimes blurred," such that "differences [of opinion] arise as to when discretionary responsibilities end and ministerial duties begin," we find that, unlike <u>Ford</u>, this case falls on the non-immune side of that line. See <u>Gardner v. City of Concord</u>, 137 N.H. 253, 257 (1993).

Accordingly, we find that the Superintendent's decisions regarding the timing and sequence of treatment of the parking lots were not entitled to discretionary function immunity and reverse the Board's decision to the contrary. Because the Board granted OPLC's motion for rehearing solely on the basis of discretionary function immunity, it did not address OPLC's motion to the extent it raised issues related to the scope of the applicable duty of care.

Accordingly, we remand so that the Board may consider those issues in OPLC's motion for rehearing.

Reversed and remanded.

BASSETT, DONOVAN, and COUNTWAY, JJ., concurred; HICKS, J., sat for oral argument but did not participate in the final vote, see N.H. CONST. pt. II, art. 78; HANTZ MARCONI, J., sat for oral argument but subsequently disqualified herself and did not participate in further review of the case.

**Timothy A. Gudas,**<br>**Clerk**