# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2023-0661, <u>Tamre McCrea & a. v. New Hampshire Department of Transportation</u>, the court on June 24, 2025, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(3). The plaintiffs, Tamre McCrea and Brian McCrea, appeal a Superior Court order (<u>Tucker</u>, J.) granting the motion for summary judgment filed by the defendant, New Hampshire Department of Transportation (NHDOT). The trial court ruled that: (1) discretionary function immunity bars the plaintiffs' claims relating to NHDOT's formulation of a traffic control plan; and (2) the plaintiffs' claims based on the defendant's negligence in implementing the traffic control plan are not supported by the facts. <u>See</u> RSA 541-B:19, I(c) (2021). On appeal, the plaintiffs challenge only the trial court ruling that NHDOT's negligence in implementing the traffic control plan is not supported by the facts. We reverse and remand.

The record before the trial court for summary judgment purposes supports the following facts. This case arises from a motor vehicle accident that occurred at 4:30 p.m. on September 27, 2015 at the intersection of Route 106 and Staniels Road in Loudon (intersection). Plaintiff Tamre McCrae was traveling south on Route 106 when, while attempting to make a left turn onto Staniels Road, her vehicle collided with a vehicle also traveling southbound and traveling to the left of her.

At the time of the accident, a race was being held at the New Hampshire Motor Speedway (NHMS), and a temporary traffic control plan (TCP) was in effect to accommodate traffic leaving NHMS. During such races at NHMS, NHDOT, NHMS, the Town of Loudon and others cooperated to alter traffic lanes in order to accommodate increased traffic created by the racing event. The TCP, which includes a traffic control schedule, details the actions required, responsibilities of each participant, and the related dates and times for each task. Generally, the TCP is designed to accommodate increased northbound traffic flow before a race, and increased southbound traffic flow after a race.

When southbound traffic increased due to fans leaving NHMS, additional southbound lanes were created to accommodate motorists traveling south from NHMS to I-393. In the areas just north and south of the intersection, where Route 106 provides only one southbound travel lane and one northbound

travel lane, the TCP called for traffic cones to be placed two feet east of the white edge line, between the northbound travel lane and the northbound shoulder. Due to a recent construction project completed in or about September 2015, Route 106 widens from one southbound lane just north of the intersection to three — one southbound through-right lane, one southbound through lane, and a southbound left turn lane. The TCP called for the cones to taper off of the white edge line and move to the yellow center line, approaching the intersection. The TCP called for NHMS employees to place traffic cones on Route 106, including in the area of the relevant intersection.

Pursuant to the TCP, at around 2:30 p.m. NHDOT performed a "sweep" of a portion of the roadway from I-393 to the south entrance of NHMS. During the "sweep," NHDOT employees discovered that NHMS had not properly placed the cones, and had placed them ten feet east of the location required by the TCP, resulting in the creation of four southbound travel lanes, rather than the three called for by the TCP. NHDOT employees met with NHMS representatives, including the manager of NHMS' highway crew, and notified them of the misplaced cones. NHMS crew did not correct the cone placement, NHDOT did not conduct a "second sweep" to verify that the cones were placed in the right location, and the road was opened to traffic. NHDOT conceded at oral argument that it was the party responsible for opening the road. Shortly after the road was opened, plaintiff Tamre McCrae was in the third southbound lane when she attempted to turn left and collided with a vehicle to her left in a lane that had been erroneously created by the improper cone placement.

The plaintiffs filed a complaint in September 2018 seeking a jury trial for damages for personal injury arising out of the accident, naming a number of defendants, including NHDOT. The plaintiffs alleged, among other things, that the traffic cones "were located in such a manner that motorists were not provided with clearly defined traffic lanes," that NHDOT failed to delineate a left turn lane independent from the temporary southbound lanes, and that this caused a defective condition that resulted in the accident.

On February 10, 2020, NHDOT moved for summary judgment, arguing that any claims arising out of the TCP are barred because NHDOT is protected by sovereign immunity, see RSA 541-B:19, I(c), and also that NHDOT could not be held liable pursuant to New Hampshire's insufficiency law. See RSA 230:78-:80 (2009). On March 1, 2021, the Trial Court (Schulman, J.) granted the motion in part and denied it in part. The trial court ruled that claims arising out of the development and creation of the TCP were barred by discretionary function immunity, but that "the ministerial implementation of the traffic control plan is not protected by discretionary function immunity." NHDOT filed a motion to reconsider, arguing that there was nothing in the record to support a claim that it had negligently implemented the TCP. NHDOT also argued that even if it had negligently implemented some portion of the TCP, the plaintiffs' claim based on the response to the misplaced cones on the

day of the accident is barred under the insufficiency statute.  See RSA 230:80, I(b).

The Trial Court (Tucker, J.) granted NHDOT's motion on October 1, 2021.  After the claims against NHDOT were dismissed, the case proceeded as to the remaining defendants.  After those claims were resolved, the plaintiffs appealed the October 1, 2021 order.

In its October 1, 2021 order, the trial court noted that in denying the motion for summary judgment in part, it had concluded that "in [its] view, liability arose from [NHDOT's] alleged negligence in omitting to report the traffic issue caused by the cone placement or to correct it."  It then considered NHDOT's argument that the court had "misapprehended the facts when it found evidence of possible liability based on failures to correct or report issues with cone placement."  It observed that the summary judgment record established that the plan required NHDOT to report the issue to NHMS, which was responsible for cone placement.  The court then stated:

> The formulation of the traffic plan is protected by discretionary function immunity.  [NHDOT's] omission to move the cones or act beyond reporting the issue to the speedway is similarly shielded from liability where the plan placed responsibility for cone placement with the speedway.

> Where the court denied summary judgment based on [NHDOT's] negligence in implementing the traffic plan, that ruling is not supported by the facts.  On reconsideration, therefore, [NHDOT's] motion for summary judgment is GRANTED in full.

The plaintiffs concede that discretionary function immunity protects the State from claims relating to the development and creation of the TCP.  However, they assert that the trial court erred in dismissing the claims against NHDOT because NHDOT's "failure to fully implement the plan and ensure adherence to same" is not protected by discretionary function immunity.

When we review a trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party.  Farrelly v. City of Concord, 168 N.H. 430, 448 (2015).  We will affirm the grant of summary judgment if there is no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law.  Id.  We review the trial court's application of the law to the facts, and its immunity rulings, de novo.  Id.

As a state agency, NHDOT enjoys the State's sovereign immunity and is immune from suit in New Hampshire courts unless a statute waives that immunity.  See Mahan v. N.H. Dep't of Admin. Services, 141 N.H. 747, 749

(1997).  One such statute is RSA chapter 541-B, which waives sovereign immunity for tort claims against state agencies in some circumstances.  See RSA ch. 541-B (2021).  RSA chapter 541-B provides several exceptions to the waiver of immunity, including "[a]ny claim based upon the exercise or performance or the failure to exercise or perform a discretionary executive or planning function or duty on the part of the state or any state agency or a state officer, employee or official acting within the scope of his office or employment." RSA 541-B:19, I(c).  This "discretionary function" exception retains governmental immunity for acts that can be characterized as "an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion."  Bergeron v. City of Manchester, 140 N.H. 417, 421 (1995).  The retention of sovereign immunity for discretionary functions stems from the separation of powers doctrine, and "reflects judicial reluctance to evaluate the wisdom of an executive or legislative choice of public policy goals or the means to accomplish those goals."  Mahan, 141 N.H. at 749-50.  It recognizes that "certain essential, fundamental activities of government must remain immune from tort liability so that our government can govern."  Id. at 750 (brackets omitted).

When resolving whether discretionary function immunity applies in particular cases, we distinguish between planning or discretionary functions and functions that are purely ministerial.  See Bergeron, 140 N.H. at 421.

> We have declined to draw a bright line between discretionary planning and the ministerial implementation of plans, however. Rather, we have stated that it would be possible for workers to implement a faulty design or plan, for which no tort liability should result, but that if, on the other hand, workers negligently follow or fail to follow an established plan or standards, and injuries result, then a government entity could be subject to tort liability.

Id. (quotations and brackets omitted).  Accordingly, certain decisions regarding traffic control, that is, those that "rest on the exercise of judgment and discretion and represent planning and policy making," fall within the category of discretionary functions entitled to immunity.  Id. at 422 (quotation omitted) (decision of whether to install a flashing beacon at an intersection is discretionary function); see also Gardner v. City of Concord, 137 N.H. 253, 258 (1993) (setting of road maintenance standards a discretionary, policy function); DiFruscia v. N.H. Dept. of Pub. Works & Highways, 136 N.H. 202, 205 (1992) (decision of whether to place guardrails is discretionary function).  However, the negligent implementation of a plan that would otherwise be protected by sovereign immunity can give rise to a negligence claim.  See DiFruscia, 136 N.H. at 205 (while decision whether or where to place a guardrail falls within discretionary function, the State was not immune from suit for a failure of a state worker to install a specific guardrail).

4

The essential facts informing the question of whether discretionary function immunity applies to NHDOT's actions are not in dispute. Pursuant to the TCP, prior to the accident, NHDOT employees performed a "sweep" of the relevant portion of the roadway, during which they discovered that the cones had been improperly placed. NHDOT employees then notified NHMS' highway crew of the misplaced cones, but the NHMS crew did not correct the cone placement. NHDOT neither corrected the cone misplacement nor conducted a "second sweep" to verify that the cones were placed in the right location before it opened the road to traffic. NHDOT concedes that the TCP required NHDOT to both conduct a sweep and notify the responsible party of any deficiency and also to determine when to open the road to traffic. In light of this, we disagree with the trial court that the claims against NHDOT for its negligence in implementing the traffic plan fall within the category of discretionary functions entitled to immunity. See Bergeron, 140 N.H. at 422. The plaintiff's claims that NHDOT was negligent do not, as NHDOT asserts, amount to an "attack[ on] the discretionary policy-making of NHDOT that went into the design of the TCP." Rather, the claims allege that NHDOT negligently followed the established plan, and those claims are supported by the evidence in the summary judgment record when that evidence, and all reasonable inferences properly drawn therefrom, are viewed in the light most favorable to the plaintiffs.

NHDOT argues that the plaintiffs have failed to identify a "non-discretionary, ministerial act that NHDOT failed to carry out as required by the TCP." NHDOT suggests that because the NHMS crew, and not state workers, improperly placed the cones and then failed to correct the improper placement after they were notified about the problem, "any error in implementing the TCP is attributable to the actions of NHMS' highway crew, not NHDOT." We disagree. The non-discretionary ministerial act that NHDOT performed was to open the road. Accordingly, we reverse the ruling of the trial court granting NHDOT's motion for summary judgment on the ground that discretionary function immunity bars claims against the NHDOT for its alleged negligence in implementing the TCP.

We note that NHDOT argued in its motion for summary judgment that it was entitled to immunity under both RSA 541-B:19, I(c) and the insufficiency law. See RSA 230:78-:80. The trial court dismissed the claims after finding that they were barred by RSA 541-B:19, and did not reach the question of whether the claims were barred by the insufficiency law. Because the trial court did not make any rulings on the applicability of the insufficiency law, we

decline to address this issue on appeal, and remand this case for further proceedings.

Reversed and remanded.

BASSETT, DONOVAN, and COUNTWAY, JJ., concurred; ABRAMSON, J., retired superior court justice, specially assigned under RSA 490:3, II, concurred.

**Timothy A. Gudas,**
**Clerk**
