Request of House of Representatives
No. 85-141

## OPINION OF THE JUSTICES

May 24, 1985

The following resolution adopted by the House of Representatives on March 30, 1985, was filed in this court on April 8, 1985:

"Whereas, in 1983 the New Hampshire Supreme Court stated that it should be reluctant to reconsider the validity of the doctrine of sovereign immunity 'until the legislature has been given an opportunity to correct the present procedural and financial inadequacies of statutes relating to sovereign immunity.' *State v. Brosseau*, 124 N.H. 184, 192 (1983); and

"Whereas, HB 440 has been introduced and amended by the judiciary committee of the house of representatives and is now pending before the house of representatives; and

"Whereas, HB 440, as amended, waives the immunity of the state with respect to claims against the state and its employees to a maximum recovery of $250,000 per claimant and $2,000,000 per incident with certain specified exceptions; and

"Whereas, the intention of HB 440, as amended, is to provide a comprehensive procedure for bringing claims against the state and its employees and to address the procedural and financial inadequacies of existing legislation, RSA 541-B; and

"Whereas, in the view of the house of representatives HB 440, as amended, provides a reasonable system of compensation to satisfy the claims of persons injured by the negligent acts of state officers

or employees while preserving the integrity of necessary governmental functions and decision-making; and

"Whereas, questions have been raised concerning the constitutionality of this legislation; be it

"Resolved by the House of Representatives:

"That the justices of the Supreme Court are respectfully requested to give their opinion upon the following questions of law:

"1. Is it permissible under Part I, Article 14 of the New Hampshire Constitution for the state to impose limitations on recovery by a person injured by the negligent acts of a state official or employee?

"2. If the answer to question one is in the affirmative, are the limitations on recovery set forth in HB 440, as amended, permissible under the New Hampshire Constitution?

"That the clerk of the house of representatives transmit copies of this resolution to the justices of the New Hampshire Supreme Court."

The following answer was returned:

*To the House of Representatives:*

The undersigned Justices of the Supreme Court submit the following reply to your request for an opinion as to the constitutionality of the provisions of House Bill No. 440 (HB 440), as amended. Interested parties were permitted to file memoranda with the court until April 19, 1985.

I. *Introduction*

"The doctrine of sovereign immunity is deeply entrenched in this jurisdiction." *Krzysztalowski v. Fortin*, 108 N.H. 187, 188, 230 A.2d 750, 751 (1967). "[T]he State is . . . immune from suit in its courts [unless it] consent[s] . . ." *Sousa v. State*, 115 N.H. 340, 342, 341 A.2d 282, 283 (1975). Hence, absent consent, the State is not subject to suit for the tortious conduct of its agents. *See, e.g., Dunaisky v. State*, 122 N.H. 280, 282, 444 A.2d 532, 534 (1982) (negligence claim of police officer against State hospital for injuries inflicted by escapee of hospital barred); *Niles v. Healy*, 115 N.H. 370, 371–72, 343 A.2d 226, 227–28 (1975) (negligence claim of State liquor store patron for injuries arising from slip on ice outside store barred); *Sousa v. State, supra* at 345, 341 A.2d at 285–86 (negligence claim for injuries resulting from collapse of State owned and maintained bridge barred). At common law, "municipal corporations [were similarly] immune from liability for torts arising out of negligence in the performance of governmental functions," *Opinion of the Justices*, 101

N.H. 546, 548, 134 A.2d 279, 280 (1957), but not of proprietary functions, *Merrill v. Manchester*, 114 N.H. 722, 726, 332 A.2d 378, 381 (1974).

Despite the firmly established position of the sovereign immunity doctrine, this court increasingly has criticized and expressed doubts as to the validity of its various aspects. Chief Justice Kenison, writing for the court in *Krzysztalowski v. Fortin, supra* at 189, 230 A.2d at 752, stated, "the writer of this opinion . . . takes a dim view of governmental immunity." In *Merrill v. Manchester, supra* at 729, 332 A.2d at 383, this court significantly altered the common law immunity of municipalities by abolishing the governmental-proprietary function distinction. Most recently, in *State v. Brosseau*, 124 N.H. 184, 193–203, 470 A.2d 869, 875–81 (1983), Justices Douglas and Batchelder in a special concurrence urged the court to hold unconstitutional the statutes conferring immunity on the State.

In *State v. Brosseau supra,* the opinion of the court stated that judicial action on the validity of the doctrine of sovereign immunity should be deferred "until the legislature has been given an opportunity to correct the present procedural and financial inadequacies of statutes relating to sovereign immunity." *State v. Brosseau, supra* at 192, 470 A.2d at 874. Similarly, in *Tilton v. Dougherty*, 126 N.H. 294, 300, 493 A.2d 442, 446 (1985), Justice Brock, writing for the court, stated, "whatever future the [sovereign immunity] doctrine may have depends on the merits of the legislative response to the widespread dissatisfaction with it."

As the resolution certifying the bill to our consideration makes clear, HB 440 is a legislative response to the increasing criticism of the sovereign immunity doctrine. HB 440 addresses this criticism by, among other things: (1) preserving the sovereign immunity of the State and the official immunity of its officials and employees except where the bill or other legislation waives the immunities; (2) waiving these immunities for claims by persons injured by negligent acts of State employees, subject to certain exceptions and restrictions; (3) establishing procedures for the adjudication of such claims; and (4) limiting the damages recoverable against the State to a maximum of $250,000 per claimant and $2,000,000 per incident.

In certifying HB 440 for our opinion, the House of Representatives asks us the following two questions:

"1. Is it permissible under Part I, Article 14 of the New Hampshire Constitution for the state to impose limitations on recovery by a person injured by the negligent acts of a state official or employee?

"2. If the answer to question one is in the affirmative, are the limitations on recovery set forth in HB 440, as amended, permissible under the New Hampshire Constitution?"

In presenting our opinion, we address, first, the constitutional principles at issue, and, second, the specific provisions of HB 440.

II. *The Constitution*

Part I, article 14 of the State Constitution provides:

"Every subject of this state is entitled to a certain remedy, by having recourse to the laws, for all injuries he may receive in his person, property, or character; to obtain right and justice freely, without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws."

 "The purpose of [this provision is] to make civil remedies readily available, and to guard against arbitrary and discriminatory infringements on access to courts." *Estate of Cargill v. City of Rochester*, 119 N.H. 661, 665, 406 A.2d 704, 706 (1979).

 Our constitution guarantees State citizens equal protection under the law. N.H. CONST. pt. I, arts. 2 and 12. Principles of equal protection are intended to ensure that persons similarly situated are similarly treated by government. *See Gazzola v. Clements*, 120 N.H. 25, 29, 411 A.2d 147, 151 (1980). Under the equal protection provisions, "the right to recover for personal injuries is . . . an important substantive right." *Carson v. Maurer*, 120 N.H. 925, 931–32, 424 A.2d 825, 830 (1980). Accordingly, legislative classifications of that right " 'must be reasonable, not arbitrary, *and* must rest upon some ground of difference having a fair and substantial relation to the object of the legislation' in order to satisfy State equal protection guarantees." *Id.* at 932, 424 A.2d at 830–31 (quoting *State v. Scoville*, 113 N.H. 161, 163, 304 A.2d 366, 369 (1973)) (citations omitted).

 "The continued existence of any application of the doctrine of sovereign immunity depends upon whether the restrictions it places on an injured person's right to recovery be not so serious that [they] outweigh[] the benefits sought to be conferred upon the general public." *State v. Brosseau*, 124 N.H. 184, 197, 470 A.2d 869, 878 (1983) (Douglas and Batchelder, JJ., concurring specially). We therefore identify the policy considerations that support and those that oppose the continuation of the immunity doctrine.

Four considerations support continuation of the immunity doctrine. First, exposure to liability would force the State to obtain funds to satisfy, process, and insure against claims against the State by either increasing revenues or diverting funds from other uses. *See State v. Brosseau, supra* at 197–98, 470 A.2d at 878 (Douglas and

Batchelder, JJ., concurring specially); W. PROSSER, HANDBOOK OF THE LAW OF TORTS § 131, at 975 (4th ed. 1971). If the State incurred significant liability, the payment of these costs could impair the financial ability of the State to render governmental services. Second, exposure to liability for the State's tortious performance of functions that it alone can perform, such as law enforcement, in a sense, would penalize the State for undertaking these obligations. *See State v. Brosseau*, 124 N.H. at 200–02, 470 A.2d at 880–81 (Douglas and Batchelder, JJ., concurring specially). Unlike an individual or private entity, which can select its activities to minimize its liability exposure, the State may not eschew certain functions, even if the attendant liability exposure is onerous. Third, exposure to liability could inhibit the ability of the legislature and the executive to exercise effectively their discretion. *See id.; Lipman v. Brisbane Elementary Sch. Dist.*, 55 Cal. 2d 224, 229–30, 11 Cal. Rptr. 97, 99, 359 P.2d 465, 467 (1961); *DuBree v. Commonwealth*, 393 A.2d 293, 295 (Pa. 1978). To allow persons to challenge a governmental policy on the ground that it was negligently developed would force courts to re-evaluate the policy's wisdom and thus to invade the prerogatives of the legislature and the executive. *See* N.H. CONST. pt. I, art. 37 (separation of powers). Finally, exposure to liability for the judiciary's negligent disposition of suits would greatly impair the ability of the courts to render final judgments and could undermine the confidence in the court system that is essential to its effective operation. *See* K. DAVIS, ADMINISTRATIVE LAW TREATISE §§ 25.13, 25.16 (1958).

Against these four considerations must be weighed the constitutional principle "that all citizens have a right to the redress of their actionable injuries" and the policy that a person or entity that "unreasonably interferes with the interests of another should be liable for the resulting injury." *Gould v. Concord Hospital*, 126 N.H. 405, 409, 493 A.2d 1193, 1196 (1985); N.H. CONST. pt. I, art. 14. Also supporting abrogation of the immunity doctrine is the fact that its historical justifications are no longer sound. *See Merrill v. Manchester*, 114 N.H. 722, 724–26, 332 A.2d 378, 380–81 (1974).

The scope of the legislature's authority to immunize the State from tort liability depends on a balancing of the considerations supporting and opposing continuation of the immunity doctrine. In *Merrill v. Manchester supra*, this court abolished the rule that a municipality is immune from liability for torts arising from its performance of governmental, but not proprietary, functions. The court stated that the availability of insurance, the likelihood that liability exposure would encourage responsible government, and the principle that a party should be liable for the injuries it causes others

militate against governmental immunity. *Id.* at 728–29, 332 A.2d at 383. The court measured these considerations against the need to foster effective operation of the judicial, legislative, and policy-making functions of municipal governments. The court established a balance between these two sets of considerations by extending a municipality's potential liability to include liability for its torts not arising from "acts or omissions constituting (a) the exercise of a legislative or judicial function, [or] (b) the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion." *Id.* at 729, 332 A.2d at 383. We find the analysis of *Merrill* helpful.

As the opinions in *State v. Brosseau,* 124 N.H. 184, 470 A.2d 869 (1983), and *Tilton v. Dougherty,* 126 N.H. 294, 493 A.2d 442 (1985), reveal, this court is not unanimous in assigning relative weight to the considerations urged in support of and in opposition to the doctrines of sovereign and official immunity. Some members of the court would rest the constitutional analysis in this case on the ground that any assertion of sovereign or official immunity is presumptively unconstitutional, but nonetheless justifiable within certain limits. For these members of the court, immunity would be justifiable with respect to claims arising from "acts or omissions constituting (a) the exercise of a legislative or judicial function, [or] (b) the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion." *Merrill v. Manchester,* 114 N.H. at 779, 332 A.2d at 383. All but one of these members of the court would also recognize the possibility of an assertion of immunity in certain other cases in the form of reasonable limits on recovery.

Other members of the court would assign a greater relative weight to the considerations favoring immunity, and would decline to begin the analysis by recognizing any broad presumption against the constitutionality of the immunity doctrines. These members of the court would agree that immunity should be recognized in the instances described in the foregoing quotation from *Merrill,* and would likewise recognize that reasonable dollar limitations on recovery are constitutional.

Thus, despite different starting points, the court is unanimous in its judgments concerning all but one of the basic features of the amended bill. Moreover, the court is unanimous in finding that the bill would create certain equal protection problems by its proposed demarcation between protected and unprotected activities. The practical result is either a majority or unanimity within the court on

the results of applying constitutional analyses to the bill. With this background, we turn to consider the provisions of the bill in detail.

III. *House Bill 440*

In reviewing the bill, we confine our attention to three of its aspects: A. the substantive scope of liability imposed on the State; B. the notice required to be given the State before a claim against the State may be filed; and C. the limits set on damages recoverable against the State.

A. *Substantive Scope of Liability*

HB 440 proposes to withdraw the shield of sovereign immunity to allow against the State actions alleging a "request for monetary relief for bodily injury, death or property damages caused by the failure of the state or state officers, trustees, officials, employees, or members of the general court to follow the appropriate standard of care when that duty was owed to the person making the claim." (Proposed RSA 541-B:1, II-a.) The bill thus allows negligence actions to be maintained against the State for the above-specified types of injuries. Complementing and qualifying this allowance of negligence claims are six provisions retaining the State's immunity under certain circumstances. To determine whether the substantive scope of liability imposed on the State is constitutionally sufficient, we consider, first, the constitutionality of limiting actionable injuries to "bodily injury, death or property damages," and, second, the constitutionality of the six provisions detailing the circumstances under which the immunity of the State is retained.

By authorizing recovery only for "bodily injury, death or property damages," the bill denies recovery for otherwise actionable injuries, including emotional distress, loss of consortium, interference with economic relations, and invasion of privacy. We see no basis for excluding recovery for these injuries, while allowing recovery for the specified injuries. The State's interest in minimizing its liability does not depend on the nature of the injury inflicted; nor does the plaintiff's interest in obtaining recovery necessarily depend on the nature of the injury suffered. A plaintiff whose car has been damaged due to the negligence of a State employee cannot rationally be said to be more entitled to relief than a plaintiff who has suffered the emotional trauma of witnessing a loved one negligently injured or killed at the hands of that same employee. We therefore find that the State may not authorize recovery for certain injuries to the exclusion of others.

We next address the six provisions in HB 440 that specify the circumstances under which the State retains its immunity. To opine on their constitutionality, we address the provisions in turn.

1. *Proposed RSA 541-B:19, I(a)*

"Any claim which is based upon the exercise of a legislative or judicial function."

 The effective exercise of legislative discretion and the ability of the courts to render final judgments and to maintain confidence in the judiciary would be greatly impaired by exposure to liability for the tortious exercise of legislative or judicial functions. Continuing the immunity in these areas is therefore permissible.

2. *Proposed RSA 541-B:19, I(c)*

"Any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the state or any state agency or a state officer, employee, or official acting within the scope of his office or employment."

 In the broad spectrum of official actions that can be called discretionary, there is a point at which the exercise of discretion is no longer characterized by a choice of policy and becomes simply a choice of means to implement policy. As to the former type of actions, the members of this court are not prepared to state the extent to which the legislature may immunize the State and its officials from tort liability. We recognize, however, that under the constitutional principle of separation of powers, N.H. CONST. pt. I, art. 37, certain actions of the executive are clearly immune. For these actions, we adopt the following test:

"When the particular conduct which caused the injury is one characterized by the high degree of discretion and judgment involved in weighing alternatives and making choices with respect to public policy and planning, governmental entities should remain immune from liability. . . ."

*Whitney v. Worcester*, 373 Mass. 208, 217–19, 366 N.E.2d 1210, 1216 (1977). We therefore would uphold this provision to the extent that it immunizes the State in its exercise of an executive or planning function involving the making of a basic policy decision that is characterized by a high degree of official judgment or discretion. We render no opinion on the constitutionality of this provision to the extent that it confers immunity broader than that contemplated in the standard recited above.

3. *Proposed RSA 541-B:19, I(d)*

"Any claim arising out of an intentional tort, including

assault, battery, false imprisonment, false arrest, intentional mental distress, malicious prosecution, malicious abuse of process, libel, slander, misrepresentation, deceit, invasion of privacy, interference with advantageous relations, or interference with contractual relations."

Among HB 440's limitations on the tort liability of the State, this provision's conferrence of intentional tort immunity is the most sweeping. Although we would uphold the constitutionality of this provision if its application were narrower, we find the present version overly broad.

In balancing the citizen's constitutional right to the redress of his actionable injuries against the State's interest in limiting its tort liability, we believe that the State may immunize itself and its officials from intentional tort liability whenever the offending State employee acted under a reasonable belief that his conduct was authorized by law. Liability should arise only if the employee did not reasonably believe in the lawfulness of his conduct. As is more fully discussed below, we would so circumscribe the potential liability of the State because unbridled liability exposure in our view would discourage diligent service on the part of State personnel and thus would impair the functioning of State government.

The functioning of government necessarily entails certain personally intrusive actions by the State, such as the making of arrests, the condemnation of property, or the garnishment of wages. Because these intrusions are almost always intentional, such an intrusion, if not authorized by law, may well constitute an intentional tort.

Although we fully expect government personnel to be familiar with and to conform their conduct to the law, we recognize that unfamiliarity with the subtler nuances of the law may occasionally lead State personnel to overstep its bounds and thereby to injure unlawfully the interests of a third party.

▮ To hold the State liable when the employee or official reasonably believes that his conduct conforms to the law would in our opinion have a chilling effect on the morale and motivation of government personnel. Given the societal importance of maintaining vigilant government personnel, we believe that the State is not constitutionally compelled to expose itself to liability for intentional torts committed by government officials or employees who act under a reasonable belief in the lawfulness of their conduct.

▮▮ We do not find a similarly compelling rationale for insulating the State from liability for intentional torts not grounded on a reasonable belief in the lawfulness of the disputed act. We therefore

conclude that, in such instances, the citizen's constitutional right to the redress of injuries prevails.

We recognize that exposing the State to even this limited liability for its intentional torts sharply breaks with precedent. We note, however, that the window of liability opened by our construction of HB 440 is small. The State's liability in tort is vicarious. To establish the State's intentional tort liability, a plaintiff thus must prove that the offending State employee not only lacked a reasonable belief in the lawfulness of his conduct, but also acted within the scope of his employment. *See Chalmers v. Harris Motors*, 104 N.H. 111, 116, 179 A.2d 447, 451 (1962). Establishing both of these elements in most instances should prove a difficult task. If both elements can be proved, imposition of liability on the State, however, is the only just recourse.

4. *Proposed RSA 541-B:19, I(b)*

"Any claim based upon an act or omission of a state officer, employee, or official when such officer, employee, or official is exercising due care in the execution of any statute or any rule of a state agency."

This provision's retention of sovereign immunity in instances where State employees or officials act with reasonable care does not affect the State's exposure to liability. As we have previously discussed, liability for negligence will arise only on the failure of an employee to exercise reasonable care and for an intentional tort only on the failure of an employee to act under a reasonable belief in the lawfulness of his conduct. We can imagine no circumstances under which an employee's exercise of reasonable care would create tort liability on the part of the State. This provision therefore raises no apparent constitutional problems.

5. *Proposed RSA 541-B:19, I(e) and (f)*

"Any claim arising in respect to the assessment or collection of any tax, or the lawful detention of any goods or merchandise by any law enforcement officers."

"Any claim arising out of the ownership, occupation, maintenance, or operation of public sidewalks, streets, highways, or publicly owned airport runways or taxiways."

The sweeping immunity conferred by these provisions is not constitutionally justifiable. We believe that the State's interest in minimizing its liability exposure is adequately served by retention of the State's immunity for injuries caused in the exercise of a legis-

lative, judicial, or planning function, and for intentional torts based on a reasonable belief in the lawfulness of the offensive act. If the legislature wishes to further insulate the State from the consequences of its tortious conduct, it must employ measures that do not purport to reduce the substantive scope of the State's liability. We therefore believe that the constitution prohibits retention of the immunity recited in the provisions above.

B. *Statute of Limitation and Notice of Claim Requirement*

HB 440 proposes to amend RSA 541-B:14, IV to provide:

> "Any claim submitted under this chapter shall be brought within 6 years of the date of the alleged bodily injury or property damage or the wrongful death resulting from bodily injury; provided, however, that the agency is notified by mail within 180 days of the alleged bodily injury or property damage sustained by the claimant. Such notification may be made either by the claimant or an appropriate representative of the claimant."

The bill thus establishes a six-year limitations period and a six-month notice of claim period. We address these two provisions in turn.

Because "[i]t is manifestly unfair to foreclose an injured person's cause of action before he has had a reasonable chance to discover its existence," *French v. R. S. Audley, Inc.*, 123 N.H. 476, 479, 464 A.2d 279, 282 (1983), we have construed various limitations statutes to begin to run when the plaintiff knows, or, in the exercise of reasonable care, should know, that he has suffered an injury and that it may have been caused by the defendant. *Id.* at 480, 464 A.2d at 282 (tortious property damage); *Carson v. Maurer*, 120 N.H. 925, 936, 424 A.2d 825, 833 (1980) (medical malpractice); *Raymond v. Eli Lilly & Co.*, 117 N.H. 164, 174–75, 371 A.2d 170, 176–77 (1977) (drug products liability); *McKee v. Riordan*, 116 N.H. 729, 730–31, 366 A.2d 472, 473 (1976) (legal malpractice). We see no reason justifiable, under an equal protection analysis, for denying persons injured by the State this rule's protection. We therefore find that the "discovery rule" governs the accrual of causes of action under this limitations provision. Since the limitations period is otherwise equivalent to the period accorded personal injury actions against private tortfeasors, RSA 508:4, it raises no other constitutional issues.

The notice of claim provision has two purposes: to allow the State to investigate claims promptly after an injury, and to permit the State to pursue settlement negotiations prior to the institution of

suit. *See Johnson v. City of Fairbanks*, 583 P.2d 181, 187 n.19 (Alaska 1978). Although these are permissible objectives, the loss of rights of action for failure to satisfy the notice requirement is a penalty grossly disproportionate to these intended benefits. We therefore uphold the provision to the extent that noncompliance does not result in forfeiture of any rights of action against the State. Viewed in this light, the provision's language is directory, not mandatory or jurisdictional. Only by thus reading the statute are the interests of the plaintiff, as well as those of the State, protected. *Cf. Reich v. State Highway Dep't*, 386 Mich. 617, 623-24, 194 N.W.2d 700, 702 (1972) (sixty-day notice provision violated federal and state constitutions); *Turner v. Staggs*, 89 Nev. 230, 235, 510 P.2d 879, 882-83 (six-month notice provision violated federal constitution), *cert. denied*, 414 U.S. 1079 (1973).

The same reasoning that we have applied to the six-month notice provision requires us to strike down the bill's provision limiting interest on judgments against the State to the period following judgment. (Proposed RSA 541-B:14, III.) RSA 524:1-b provides generally that interest shall run from the date of the writ. We see no basis for distinguishing between the State or its officials and other defendants on this matter.

C. *Damage Limits*

HB 440 proposes to amend RSA 541-B:14, I to provide:

> "All claims arising out of any single incident against any agency for damages in tort actions shall be limited to an award not to exceed $250,000 per claimant and $2,000,000 per any single incident, or the proceeds from any insurance policy procured pursuant to RSA 412:3, whichever amount is greater . . . ."

The bill thus establishes two damage ceilings: $250,000 per claimant and $2,000,000 per incident. The constitutionality of these limitations turns on whether "the restrictions . . . place[d] on an injured person's right to recovery" by these limitations "be not so serious that [they] outweigh[] the benefits sought to be conferred upon the general public." *State v. Brosseau*, 124 N.H. 184, 197, 470 A.2d 869, 878 (1983) (Douglas and Batchelder, JJ., concurring specially). We find that this test is satisfied and therefore uphold the per claimant and the per incident damage ceilings.

The authority of the legislature to set reasonable limits on damages recoverable against governmental entities is well established. *See Estate of Cargill v. City of Rochester*, 119 N.H. 661, 669, 406 A.2d 704, 708-09 (1979); *Merrill v. Manchester*, 114 N.H. 722, 730,

332 A.2d 378, 384 (1974). In *Estate of Cargill* we upheld the constitutionality of RSA 507-B:4 (1977) which limited tort damages recoverable from political subdivisions of the State to $50,000 per person for bodily injuries. *Estate of Cargill v. City of Rochester*, 119 N.H. at 669, 406 A.2d at 709. We found that the relationship between tort plaintiffs and governmental units was distinguishable from the relationship between plaintiffs and nongovernmental tortfeasors, and therefore held that the two classes of plaintiffs, in this respect, are not similarly situated. Among these distinguishing features is the fact that citizens have a legal right to influence the policies of their government, including its decisions on safety precautions, employee conduct, and the acquisition of liability insurance. *Id.* at 666–67, 406 A.2d at 706–07; *cf. Park v. Rockwell Int'l Corp.*, 121 N.H. 894, 898–99, 436 A.2d 1136, 1138–39 (1981) ($1,200 limit on damages for burial expenses of decedents without dependents in workers' compensation cases invalid); *Carson v. Maurer*, 120 N.H. 925, 941–44, 424 A.2d 825, 836–38 (1980) ($250,000 limit on damages for noneconomic losses in medical malpractice cases invalid). We note that this special characteristic of the government-tortfeasor citizen-plaintiff relationship is present where the tortfeasor is the State and therefore find this aspect of the *Cargill* analysis persuasive.

We earlier noted that the State had an interest in minimizing its liability exposure because if the State incurred significant liability, the payment of claims could impair the financial ability of the State to render governmental services. Recognizing the risk posed by unlimited liability exposure, as well as the unique characteristics of the State-tortfeasor citizen-plaintiff relationship, we hold that reasonable recovery limits are constitutionally permissible.

The $250,000 per claimant limitation distinguishes between persons injured by the State and persons injured by other tortfeasors. Although a plaintiff's legitimate damages may exceed this ceiling, we find that, even "[g]iven the soaring costs of medical services, legal expenses, and other damages likely to be sustained by tort victims," this limit adequately balances the competing interests of the State and of the personal injury plaintiff at this time. *Estate of Cargill v. City of Rochester*, 119 N.H. at 668–69, 406 A.2d at 708 (1979). We therefore uphold its constitutionality.

The $2,000,000 per incident limitation will apply only in certain instances where there are more than eight persons claiming damages from the State for the same incident ($250,000 per person limit × 8 plaintiffs = $2,000,000 per incident limit). In such an instance, the hardship occasioned by application of this provision could be

severe. If, for example, a fire attributable to the negligence of the State causes injuries to 100 people, the average amount of damages that could be recovered by each individual would be at most $20,000. Given the fact that this figure would likely have to be further reduced by the payment of attorney's fees and court costs, the final amount obtained by an individual plaintiff might compensate him for only a fraction of his injuries.

Although we recognize the potential hardship posed by this provision, we also recognize that any similar restriction will pose the same problems. Since we have determined that the legislature may constitutionally limit the damages recoverable from the State, the only issue before us is whether the $2,000,000 limit is a reasonable exercise of the legislature's authority. "We are not prepared to say . . . that [the limit] is so severe as to be 'very wide of any reasonable line of demarcation.' " *Estate of Cargill v. City of Rochester*, 119 N.H. at 669, 406 A.2d at 708 (1979) (quoting *Opinion of the Justices*, 113 N.H. 205, 213, 304 A.2d 881, 887 (1973)). It is therefore constitutional.

> JOHN W. KING
> DAVID A. BROCK
> WILLIAM F. BATCHELDER
> DAVID H. SOUTER

I fully agree with this opinion with the exception of section III. C, upholding dollar limits on recovery, for the reasons stated in my dissent in *Estate of Cargill v. City of Rochester*, 119 N.H. 661, 670, 406 A.2d 704, 709 (1979).

> CHARLES G. DOUGLAS, III

*Stephen E. Merrill*, attorney general (*Bruce E. Mohl*, assistant attorney general), filed a memorandum on behalf of the State, in support of the constitutionality of House Bill 440, as amended.

*Francis G. Murphy*, of Manchester, filed a memorandum on his own behalf, in opposition to the constitutionality of House Bill 440, as amended.