NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2015-0351


LYNETTE MARYEA

v.

THOMAS VELARDI & a.

Argued: November 12, 2015
Opinion Issued: March 8, 2016


The MuniLaw Group, of Epsom (Tony F. Soltani on the brief and orally), for the plaintiff.


Maggiotto & Belobrow, PLLC, of Concord (Corey Belobrow on the brief and orally), for defendant Strafford County.


HICKS, J. The plaintiff, Lynette Maryea, appeals an order of the Superior Court (Smukler, J.) ruling that defendant Strafford County is entitled to discretionary function immunity and granting the County's motion for summary judgment in an action for damages arising out of an automobile accident. Maryea and co-defendant Thomas Velardi settled. The principal issue in this case is whether the provisions in RSA chapter 507-B waiving governmental immunity from tort liability arising out of, among other things, the operation of motor vehicles, abrogate the County's common law

discretionary function immunity. We hold that they do not, and, accordingly, we affirm.

The trial court's order recites the following facts. Maryea was an inmate at the Strafford County House of Corrections. In January 2011, the County was transporting Maryea from the House of Corrections to the Federal District Court in Concord in an inmate transport van. Maryea rode handcuffed and shackled in the van's back compartment, which was designated for inmates. The compartment had no seatbelts. During the drive, the van collided with Velardi's vehicle, and Maryea sustained injuries. Maryea then brought negligence claims against Velardi and the County. In her negligence claim against the County, Maryea alleged that the County is liable for her injuries because the transport van was not equipped with seatbelts in the back compartment where she was required to be seated.

Wayne Estes, the former Sheriff of Strafford County, had previously considered installing seatbelts in the County's inmate transport vans but had decided against it. In an affidavit, Estes explained that the only seatbelts available for the inmate compartments were "lap belts." According to Estes, because of their shackles, the inmates would not be able to tighten the lap belts. To secure the belts, Estes explained, corrections officers would need to enter the vans with the inmates. Each transport van could carry up to eight inmates, and Estes worried that, as corrections officers adjusted the inmates' seatbelts, inmates might overwhelm the officers, take their firearms, and/or escape.

The County moved for summary judgment, arguing that it was immune from liability because the decision not to install seatbelts was a discretionary function. In her objection, Maryea raised three principal arguments: (1) RSA 507-B:2 abrogated the County's common law discretionary function immunity; (2) the transportation of prisoners was not a "decision requiring a high degree of discretion" protected by discretionary function immunity; and (3) the County was not entitled to immunity because its use of the transport van was a "proprietary function," rather than a governmental function. (Bolding omitted.) The trial court granted summary judgment in the County's favor. On appeal, Maryea raises the same arguments. We address each argument in turn.

We begin by analyzing Maryea's argument that RSA 507-B:2 abrogated the County's common law discretionary function immunity. Maryea explains that "RSA 507-B:5 acts as a general grant of immunity to governmental units." See RSA 507-B:5 (2010). According to Maryea, RSA 507-B:5 "removes any common law immunities as well as the common law associated with bodily injury or personal injury cause[s] of action[], and grants immunity, subject to the exceptions found in RSA 507-B:2." The County contends that discretionary function immunity survived RSA chapter 507-B's enactment. It cites Ford v. New Hampshire Department of Transportation, 163 N.H. 284 (2012), for the

proposition that "[t]he existence of immunity for discretionary functions is fundamental to [New Hampshire's] system of separation of powers." Ford, 163 N.H. at 294. The County then asserts that, "based on separation of powers," discretionary function immunity is "constitutionally required." The County further argues that discretionary function immunity remained "intact" after RSA chapter 507-B because this court has continued to apply the doctrine in cases in which "liability would have been [otherwise] permissible under RSA 507-B:2."

Merrill v. City of Manchester, 114 N.H. 722 (1974), charted a new course for governmental immunity in New Hampshire law.[1] Before Merrill, municipalities were immune from tort liability if their tortious acts arose from the "exercise [of] a governmental function." Merrill, 114 N.H. at 725. However, municipalities "acting in their corporate or proprietary capacity" were "liable for their torts under the same principles applied to private corporations." Id. In Merrill, we rejected this governmental-proprietary function immunity framework, holding that municipalities were "subject to the same rules as private corporations if a duty ha[d] been violated and a tort committed." Id. at 730. However, we recognized an exception. Immunity remained for "acts and omissions constituting (a) the exercise of a legislative or judicial function, and (b) the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion." Id. at 729. We refer to this exception as discretionary function immunity. See Everitt v. Gen. Elec. Co., 156 N.H. 202, 211 (2007).

In response to Merrill, the legislature enacted RSA chapter 507-B, entitled "BODILY INJURY ACTIONS AGAINST GOVERNMENTAL UNITS." See Schoff v. City of Somersworth, 137 N.H. 583, 585 (1993). RSA 507-B:5 states that "[n]o governmental unit shall be held liable in any action to recover for bodily injury, personal injury or property damage except as provided by this chapter or as is provided or may be provided by other statute." RSA 507-B:5. RSA 507-B:2 creates an exception to RSA 507-B:5, providing that "[a] governmental unit may be held liable for damages in an action to recover for bodily injury, personal injury or property damage caused by its fault or by fault

---

[1] We note that many of our discretionary function cases, including Merrill, involved municipalities, not counties. However, at the time Merrill was decided, counties and municipalities both enjoyed immunity. See Opinion of the Justices, 101 N.H. 546, 548 (1957) (noting that municipal immunity "from liability for torts arising out of negligence in the performance of governmental functions" extends to counties); Dempster v. County, 88 N.H. 472, 473 (1936). Here, neither party distinguishes between counties and municipalities for the purposes of discretionary function immunity. Moreover, we see no reason why discretionary function immunity should protect municipalities' discretionary acts but not the discretionary acts of counties. Cf. Bergeron v. City of Manchester, 140 N.H. 417, 421 (1995) (addressing a city's and the State's discretionary function immunity together "[b]ecause the standards governing whether a city is immune from tort liability under Merrill do not differ appreciably from those that govern the State's immunity under RSA chapter 541-B").

attributable to it, <u>arising out of ownership, occupation, maintenance or operation of all motor vehicles</u>, and all premises."  RSA 507-B:2 (2010) (emphasis added).  RSA 507-B:1, I, defines "governmental unit" as "any political subdivision within the state including any county, city, [or] town."  RSA 507-B:1, I (2010).

RSA chapter 507-B does not address discretionary function immunity.  Since its enactment, however, we have regularly applied this immunity doctrine in tort cases that involve state and local governmental units:

> [W]e have held that immunity exists for: . . . a town selectmen's decision not to lay out certain roads, <u>Rockhouse Mt. Property Owners Assoc. v. Town of Conway</u>, 127 N.H. 593, 600 (1986); traffic control and parking regulations, <u>Sorenson v. City of Manchester</u>, 136 N.H. 692, 694 (1993); setting of road maintenance standards and construction of a sidewalk when based upon a city's faulty plan or design, <u>Gardner [v. City of Concord</u>, 137 N.H. 253, 258, 259 (1993)]; traffic control and management of roadway safety, <u>Bergeron v. City of Manchester</u>, 140 N.H. 417, 422, 424 (1995); a decision whether to enact maintenance and inspection regulations, <u>Mahan [v. N.H. Dep't of Admin. Services</u>, 141 N.H. 747, 751 (1997)]; and the training and supervision of coaches and referees at a school basketball game, <u>Hacking [v. Town of Belmont</u>, 143 N.H. 546, 550 (1999)].

<u>Everitt</u>, 156 N.H. at 211-12.

Moreover, in <u>Everitt</u>, we distinguished between statutory immunity — such as sovereign immunity, <u>see</u> RSA 99-D:1 (2013), and immunity for governmental units, <u>see</u> RSA ch. 507-B — and common-law municipal immunity, which, except for discretionary function immunity, we abrogated in <u>Merrill</u>.  <u>See</u> <u>Everitt</u>, 156 N.H. at 209.  We recognized that discretionary function immunity was necessary to protect "certain essential, fundamental activities of government . . . so that our government can govern."  <u>Id</u>. at 210 (quotation omitted).  We noted that discretionary function immunity was meant "to limit judicial interference with legislative and executive decision-making."  <u>Id</u>. (quotation omitted).  Thus, as we explained in <u>Ford</u>, "[t]he existence of immunity for discretionary functions is fundamental to our system of separation of powers."  <u>Ford</u>, 163 N.H. at 294.

Recently, in <u>Farrelly v. City of Concord</u>, 168 N.H. ___, ___ (decided Dec. 23, 2015), we noted that, "as our decisions indicate, we have not interpreted [RSA chapter 507-B] as completely occupying the field of municipal immunity so as to preempt the common law doctrine."  We now hold that RSA chapter 507-B does not abrogate the doctrine of discretionary function immunity.  For more than forty years, discretionary function immunity, which is rooted in New

4

Hampshire's constitutional separation of powers, has operated alongside RSA chapter 507-B's immunity framework, protecting the discretionary decisions of governmental units even when those decisions concerned the ownership, occupation, maintenance, or operation of motor vehicles or premises. See, e.g., Tarbell Adm'r, Inc. v. City of Concord, 157 N.H. 678, 679-80 (2008) (holding that discretionary function immunity barred the plaintiff's "negligence claims alleging that the City failed to properly construct a dam," i.e., a city premises, and control and regulate its water level). During this time, the legislature has not amended RSA chapter 507-B in a way that would affect the application of discretionary function immunity. We therefore reject Maryea's argument that RSA 507-B:2 abrogated the County's discretionary function immunity in this case.

Maryea's injuries allegedly arose from the County's decision not to install seatbelts in the inmate transport van that was transporting her to the Federal District Court.[2] That decision concerned the County's "ownership, occupation, maintenance or operation of [its] motor vehicles." RSA 507-B:2. However, as explained above, the County may still be immune from liability if its decision constituted a discretionary function.

"In resolving discretionary immunity questions, we distinguish between planning or discretionary functions and functions that are purely ministerial." Bergeron, 140 N.H. at 421. Planning or discretionary functions are functions that are "characterized by the high degree of discretion and judgment involved in weighing alternatives and making choices with respect to public policy and planning." Opinion of the Justices, 126 N.H. 554, 563 (1985) (quotation omitted). Ministerial functions, on the other hand, are functions that are "absolute, certain and imperative, involving merely the execution of a set task." 14 P. Loughlin, New Hampshire Practice: Local Government Law § 1040, at 27-33 (2011). For example, in our analysis of the statutory discretionary function immunity for state agencies, see RSA 541-B:19, I(c) (2007), we drew a distinction between the "decision to place or not to place a guardrail on a roadway," a protected discretionary decision, and the construction of that guardrail, an act of implementation that "neither required nor contained any discretionary decision-making." DiFruscia v. N.H. Dept. of Pub. Works & Highways, 136 N.H. 202, 205 (1992).

Here, like the decision whether to place the guardrail in DiFruscia, Estes's decision not to install seatbelts was "conduct characterized by [a] high degree of discretion." Id. (quotation omitted). Estes considered installing the

---

[2] Although, on appeal, Maryea frames some of her discretionary function arguments around the County's alleged failure to provide any safety precautions in the transport van, including "seatbelts, hand holds, [or] padding," in her complaint and in her arguments to the trial court, her negligence claim was based upon only the County's decision not to install seatbelts. For this reason, we limit our analysis to that decision.

seatbelts, but decided that the danger to the officers and the public outweighed the increased safety that the seatbelts would provide for inmates. Specifically, Estes determined that the seatbelts would require corrections officers to enter the vans with the inmates, which would make it easier for the inmates to overwhelm the officers, access their firearms, and escape. Thus, the decision not to install seatbelts involved "weighing alternatives and making choices with respect to public policy and planning," and was therefore a protected discretionary function. Opinion of the Justices, 126 N.H. at 563 (quotation omitted).

Maryea argues in her brief that the County owed a duty "to provide a reasonably safe transportation method," and was therefore "required to take some good-faith action to provide inmates with a reasonably safe environment for transportation." Maryea further argues that "[t]he issue is not whether the decision to not install seatbelts was a discretionary function, but rather whether the implementation of that decision by transporting prisoners without any . . . precautions to ensure their safety comports with" discretionary function immunity. To the extent that Maryea argues that this case involves the implementation of a discretionary decision, we reject that characterization of her claim. Maryea based her negligence action against the County on the van's lack of seatbelts, which, we have concluded was a discretionary, rather than a ministerial, function for which the County was entitled to immunity. Further, to the extent that Maryea argues that the County's duty to provide for inmate safety conflicts with and somehow abrogates the County's immunity, we agree with the County that discretionary function immunity applies even if such a duty is owed. This is because the discretionary immunity analysis does not concern the defendant's duty to the plaintiff, but the threshold question of whether the defendant's allegedly negligent act or omission is the type of discretionary conduct that discretionary function immunity protects.

In her notice of appeal and the questions presented in her brief, Maryea also refers to the County's "deliberate indifference," suggesting that it vitiates the County's discretionary function immunity. The County argues that Maryea did not preserve this deliberate indifference argument for appellate review. We agree. "On appeal, we consider only issues that have been both timely raised below and preserved for our review." Appeal of Pelleteri, 152 N.H. 809, 811 (2005). The closest that Maryea came to raising an argument in the trial court about deliberate indifference was in her objection to the County's summary judgment motion in which she stated that the County's failure to install any safety devices in the van "show[ed] a complete disregard for the safety and well[-]being of the prisoners transported." However, Maryea never suggested that the County's alleged disregard was deliberate or that deliberate indifference negated the County's immunity. Because Maryea failed to raise this argument in the trial court, we need not address it now.

6

Finally, we reject Maryea's contention that the County is not immune because its operation of the inmate transport van was a proprietary rather than a governmental function.  In Merrill, we repudiated the distinction between proprietary and governmental functions as the basis for immunity.  Merrill, 114 N.H. at 725-26, 729; see also Opinion of the Justices, 126 N.H. at 558 ("In Merrill . . . this court significantly altered the common law immunity of municipalities by abolishing the governmental-proprietary function distinction.").  Maryea cites cases from other jurisdictions that continue to employ the governmental-proprietary function distinction, but she does not attempt to reconcile those cases with Merrill.  Nor does Maryea argue that we should overrule Merrill in light of those cases.  Thus, Maryea's argument must fail.

Because we hold that RSA 507-B:2 did not abrogate the County's common law discretionary function immunity, and discretionary function immunity protected the County from liability arising from its decision not to install seatbelts in its inmate transport vans, we conclude that the trial court did not err by granting the County's motion for summary judgment.

Affirmed.

DALIANIS, C.J., and CONBOY, LYNN, and BASSETT, JJ., concurred.

7