NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2021-0563

PETITION OF NEW HAMPSHIRE DIVISION FOR CHILDREN, YOUTH AND FAMILIES

Argued: September 15, 2022
Opinion Issued: February 8, 2023

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Anthony J. Galdieri, Samuel Garland, assistant attorney general, and Lawrence P. Gagnon, attorney, on the brief, and Anthony J. Galdieri, orally), for the New Hampshire Division for Children, Youth and Families.

McLane Middleton, Professional Association, of Manchester (Scott H. Harris on the brief and orally), and Tenn and Tenn, Professional Association, of Manchester (Mary E. Tenn on the brief), for the respondent.

HANTZ MARCONI, J. The petitioner, the New Hampshire Division for Children, Youth and Families (DCYF), filed a petition for original jurisdiction under Supreme Court Rule 11, seeking review of an order of the Superior Court (Kissinger, J.) denying DCYF's motion to dismiss a complaint brought against it. DCYF asserts that the trial court erred in concluding that DCYF was not entitled to sovereign immunity under RSA chapter 541-B (2021). We accepted the petition, and we now affirm and remand.

I

On October 10, 2019, the respondent filed a complaint in superior court as parent and next friend of his children, M.M. and J.M., asserting various claims against both DCYF and the Court Appointed Special Advocates of New Hampshire (CASA).  DCYF and CASA moved to dismiss the complaint, with DCYF arguing, inter alia, that the claims were time-barred by RSA 541-B:14, IV.  The respondent objected, asserting that RSA 508:8 (2010) tolled the period of limitations in RSA 541-B:14, IV.  After a hearing on the motion, the trial court dismissed the claims against CASA as precluded by quasi-judicial immunity, but denied the motion to dismiss the claims against DCYF.  In its order, the trial court reasoned that RSA 508:8 operates as a tolling provision and that failing to read the tolling provision into the statute of limitations in RSA 541-B:14, IV would lead to "an absurd, unfair, and unjust result."  This petition followed.  In its petition, DCYF asks us to determine that RSA 508:8 does not apply to claims brought under RSA chapter 541-B.

II

DCYF, as a state agency, enjoys the State's sovereign immunity and is immune from suit in New Hampshire courts unless a statute waives that immunity.  Petition of N.H. Div. for Children, Youth & Families, 173 N.H. 613, 616 (2020) (DCYF).  One such statute is RSA chapter 541-B, which waives sovereign immunity for tort claims against state agencies in certain circumstances.  Id.; see also RSA 541-B:1, II-a.  The statute requires that "[a]ny claim submitted under this chapter . . . be brought within 3 years of the date of the alleged bodily injury, personal injury or property damage or the wrongful death resulting from bodily injury."  RSA 541-B:14, IV.

DCYF argues that it is entitled to sovereign immunity under RSA chapter 541-B because the respondent filed the complaint outside of the three-year limitations period contained in RSA 541-B:14, IV.  The respondent asserts that RSA 508:8, which states that "[a]n infant or mentally incompetent person may bring a personal action within 2 years after such disability is removed," must be read into RSA 541-B:14, IV in order for the statute to comport with Part I, Articles 2, 12, and 14 of the New Hampshire Constitution.  It is the respondent's position that when the State waives sovereign immunity, it places itself "on an equal footing with private parties sued for the same or similar errors and omissions," and, thus, "[a]bsent the incorporation of RSA 508:8 into the application of [RSA 541-B:14], . . . there would be a class of children who will be barred from recourse."  DCYF contends that RSA chapter 541-B "creates a statutory private remedy against the State where a remedy does not otherwise exist" and, therefore, the equal protection clause "poses no constitutional obstacle."  We agree with the respondent and hold that RSA

508:8 must be read into RSA 541-B:14, IV in order to comport with the equal protection guarantees afforded to the citizenry under Part I, Articles 2 and 12 of the New Hampshire Constitution.

Ordinarily, we decline to reach constitutional issues in a case that can be decided on a non-constitutional ground. Chapman v. Douglas, 146 N.H. 209, 211 (2001). However, in Opinion of the Justices, we observed that the statute of limitations contained in RSA 541-B:14, IV could potentially violate the equal protection clauses, and, in fact, would violate the equal protection clauses absent the inclusion of the "discovery rule." Opinion of the Justices, 126 N.H. 554, 566 (1985); see RSA 508:4 (2010). Here, failure to read RSA 508:8 into RSA 541-B:14, IV would similarly violate the equal protection clauses. Accordingly, we elect to forgo our general policy of constitutional avoidance and address the parties' fully briefed equal protection arguments. See N.H. Democratic Party v. Secretary of State, 174 N.H. 312, 321 (2021) ("We presume a statute to be constitutional and will not declare it invalid except upon inescapable grounds.").

We begin our analysis with a review of the history and purpose of our State's sovereign immunity. The doctrine of sovereign immunity is deeply entrenched in this jurisdiction. Opinion of the Justices, 126 N.H. at 557. Indeed, the State's immunity from suit is traced back to the immunity of the British Crown carried over to the States by the courts. Sousa v. State, 115 N.H. 340, 342 (1975) (citing Bow v. Plummer, 79 N.H. 23 (1918)). Despite its long history in this state, this court has also been skeptical of the merits of the doctrine of sovereign immunity. See State v. Brosseau, 124 N.H. 184, 192 (1983) ("If and when we do reach the constitutionality of sovereign immunity, we would be disposed to reconsider the validity of the doctrine as it exists today."); see also Opinion of the Justices, 126 N.H. at 558 ("Despite the firmly established position of the sovereign immunity doctrine, this court increasingly has criticized and expressed doubts as to the validity of its various aspects."). We have also recognized that it is the legislature's prerogative to adequately address sovereign immunity in our laws. See, e.g., Tilton v. Dougherty, 126 N.H. 294, 300 (1985) ("Sovereign immunity itself has been rejected by some members of this court, and whatever future the doctrine may have depends on the merits of the legislative response to the widespread dissatisfaction with it."); see also Brosseau, 124 N.H. at 192 (opining that the legislature must "correct the present procedural and financial inadequacies of statutes relating to sovereign immunity").

In 1985, the legislature enacted House Bill 440, which responded in part to judicial concerns about the doctrine of sovereign immunity by amending RSA chapter 541-B. See Opinion of the Justices, 126 N.H. at 556. The New Hampshire House of Representatives sought an advisory opinion from this court on whether the proposed legislation was constitutional. Id. at 555-57. We viewed the certified questions in the context of Part I, Article 14 of the New

Hampshire Constitution and the equal protection clauses of Part I, Articles 2 and 12.  See id.  We reasoned that the "continued existence of any application of the doctrine of sovereign immunity depends upon whether the restrictions it places on an injured person's right to recovery be not so serious that they outweigh the benefits sought to be conferred upon the general public."  Opinion of the Justices, 126 N.H. at 559 (quotation and brackets omitted) (citing Brosseau, 124 N.H. at 197 (Douglas and Batchelder, JJ., concurring)).  We weighed several policy considerations supporting continuation of the sovereign immunity doctrine against "the constitutional principle that all citizens have a right to the redress of their actionable injuries."  Id. at 560; see N.H. CONST. pt I, art. 14.  Although the court was divided on the relative weight of the interests of the government and the injured person, it was unanimous in its application of the equal protection clauses to HB 440.  See Opinion of the Justices, 126 N.H. at 561-62.

Relevant to the case before us, the court determined that RSA 541-B:14, IV's statute of limitations, as then proposed in HB 440, would run afoul of this State's equal protection clauses because it did not account for the discovery rule.  Id. at 566.  We based our conclusion on the long-standing legal principle that "it is manifestly unfair to foreclose an injured person's cause of action before he has had a reasonable chance to discover its existence."  Id. (quotation and brackets omitted).  We stated that we did not see how foreclosing a claim by individuals who could not reasonably have brought suit within the period of limitations created by the statute could be "justifiable" under an equal protection analysis.  Id.  Since the limitations period contained in the amended version of RSA 541-B:14, IV was otherwise equivalent to the period accorded personal injury actions against private tortfeasors, see RSA 508:4, we determined that the limitations period raised "no other constitutional" issues.  Id.  In other words, by construing RSA 541-B:14, IV to incorporate the discovery rule, the proposed period of limitations for filing personal actions against the State would place an aggrieved individual in the same position as an individual who brought suit for a personal action against a non-governmental entity, thereby comporting with the equal protection guarantees of the State Constitution.  See id.

Thus, under the analysis employed in Opinion of the Justices, when the State waives its sovereign immunity, a statute restricting the ability of a party to bring suit against the State must comport with the principles of equal protection guaranteed by the New Hampshire Constitution.  See id. at 561-62.  We agree with that analysis and apply it in the case before us.

When considering an equal protection challenge under our State Constitution, we must first determine the appropriate standard of review by examining the purpose and scope of the State-created classification and the individual rights affected.  Cmty. Res. for Justice v. City of Manchester, 154 N.H. 748, 758 (2007).  Because the right to tort recovery is an important

4

substantive right, see Opinion of the Justices, 126 N.H. at 559, we employ the intermediate scrutiny test. See Cmty. Res. for Justice, 154 N.H. at 758. Under this test, the challenged legislation must be substantially related to an important governmental objective. Id. at 762. The burden to demonstrate that the challenged legislation meets this test rests with the government. Id.

DCYF puts forth two arguments in support of its position that RSA 541-B:14, IV is constitutional as applied to child plaintiffs. First, it argues that the statute "does not treat similarly situated persons differently." Second, it argues that RSA 541-B:14, IV "creates a statutory private remedy against the State where a remedy does not otherwise exist." We disagree with these arguments.

Failing to read RSA 508:8 into the statute of limitations in RSA 541-B:14, IV would create two classes of similarly situated child plaintiffs: child plaintiffs who have been injured by the State and child plaintiffs who have been injured by a private tortfeasor. Under RSA 541-B:14, IV as written, a child plaintiff could bring a lawsuit against the State through a parent or next friend only within three years of the alleged harm, whereas a child plaintiff could bring a lawsuit against a private tortfeasor within two years after the date the child reaches the age of majority. Compare RSA 541-B:14, IV, with RSA 508:8. Thus, we conclude that reading RSA 541-B:14, IV as DCYF suggests has the effect of creating two similarly situated classes of plaintiffs implicating the equal protection guarantees of the New Hampshire Constitution. See Opinion of the Justices, 126 N.H. at 561-62.

In addition, RSA chapter 541-B does not create a statutory remedy that does not otherwise exist. Rather, the purpose of RSA chapter 541-B is to waive sovereign immunity so that citizens may recover in tort for claims arising against the State in certain circumstances. See DCYF, 173 N.H. at 616. We have previously concluded that failing to apply the discovery rule contained in RSA 508:4 to claims against the State when it has waived sovereign immunity would violate the equal protection mandates of the State Constitution. Opinion of the Justices, 126 N.H. at 566. In so concluding, we noted our long-standing principle that "it is manifestly unfair to foreclose an injured person's cause of action before he has had a reasonable chance to discover its existence." Id. (brackets omitted).

The rationale in preventing this type of injustice extends equally to a class of plaintiffs that must rely on a parent or next friend to bring suit on their behalf before they reach the age of majority. If we were to apply the rule that DCYF suggests, then children injured by the State who do not have such a parent or next friend willing to bring suit on their behalf, like many in DCYF custody, would have their rights extinguished prior to their first opportunity to act in their own interests. In contrast, children who have claims against a private tortfeasor would face no such barrier to recovery as they would be able to bring a claim within two years after they reach the age of majority. See RSA

5

508:8.  DCYF has failed to articulate any reason — let alone an important governmental one — for foreclosing lawsuits against the State for some child plaintiffs, while allowing lawsuits for children in the same position with claims against private tortfeasors.  Nor has it articulated how such an extinguishment of rights is substantially related to an interest of the government.  RSA 508:8 is designed to prevent just such an arbitrary extinguishment of rights from occurring.  Thus, as with the discovery rule, "[w]e see no reason justifiable, under an equal protection analysis, for denying persons injured by the State" the protections of RSA 508:8.  Opinion of the Justices, 126 N.H. at 566.

For these reasons, we affirm the decision of the trial court and remand for further proceedings consistent with this opinion.  See State v. Dion, 164 N.H. 544, 552 (2013) ("Where the trial court reaches the correct result on mistaken grounds, we will affirm if valid alternative grounds support the decision." (quotation and brackets omitted)).  Because our decision on this issue is dispositive as to all of DCYF's arguments, we need not address DCYF's remaining arguments.

Affirmed and remanded.


HICKS, BASSETT, and DONOVAN, JJ., concurred.